JACKSON           This view of the case renders it unnecessary to consider
v.           the other point relied on by the defendant.
BLODGET.
                  I am, accordingly, of opinion, that judgment of nonsuit
ought to be entered; and that is the opinion of the Court.

                                        Judgment of nonsuit.

------------⊂※⊃------------

JACKSON, *ex dem.* TROUP, and others *against* BLODGET.

*C., who had*          THIS and three other actions of ejectment, on the de-
*been a soldier*
*in the New-* mise of the same lessors, were brought against the respec-
*York line, dur-*
*ing the revo-* tive tenants in possession of the premises in question, for
*lutionary war,*
*and who was* the recovery of lot No. 50., in the township of *Hannibal*,
*entitled to*
*bounty lands,* late in *Onondaga*, but now in the county of *Oswego.* The
*executed an*
*instrument to* titles respectively, of the parties in each of the suits, were
*B., dated Sep-*
*tember 11th,* precisely the same, and a case was made by consent, with-
*1786, which*
*commenced as* out going to trial, with leave for either party to turn the
*a bond in the* same into a special verdict.
*penalty of 300l.*
*under which*          On the 6th of *July*, 1790, the lot for which these suits
*there was a*
*condition re-* were brought, was duly patented to *John Clark*, a soldier in
*citing that C.*
*was entitled to* the *New-York* line during the revolutionary war.   The pa-
*a bounty in*
*land; and that*
no law having been passed by the legislature, C. had not a legal title, nor could convey the same,
but notwithstanding, *C* , in consideration of 4*l.* bargained and sold his right and title to *B.*, his heirs
and assigns : he also, by the same instrument, appointed B. his attorney to procure a deed, binding
himself not to revoke the power, and when he should have obtained the title, to convey the land
unto B.  Held, that this instrument was intended by the parties to operate as a conveyance *in prae-*
*senti*, if it could legally have that effect, and, if not, then as an agreement for a conveyance; that it
was a sufficient bargain and sale to pass a present interest, and that by virtue of the act of the 6th
of *April*, 1790, sess. 13. c. 59, which gave effect to antecedent conveyances, by the persons after-
wards obtaining patents for military bounty lands, the title of the patentee actually vested in his
grantee.
    The construction of a deed ought to be made on the entire deed, and not on any particular part
of it, and such construction should be given that, if possible, every part may be operative.  If a deed
cannot operate in the manner intended by the parties, such construction should be given that it may
operate in some other manner.  A deed is to be construed most strongly against the grantor, and if
it can enure in different ways, the grantee may take it in such a way as shall be most to his ad-
vantage.

tentee and his wife, by deed, dated the 5th of *October*, 1793, conveyed the same to *Jasper Cropsey* in fee, and the deed was, on the 25th of *April*, 1795, deposited and registered in the clerk's office of the county of *Albany*, according to law. On the 16th of *September*, 1799, *Cropsey* and wife conveyed the premises in fee to *Robert Troup*, one of the plaintiff's lessors, and the deed was duly recorded in the clerk's office of the county of *Onondaga*, on the 6th of *November*, 1799.

The defendants derived their title from a certain instrument, under seal, executed by the original patentee, and dated the 11th of *September*, 1786. This instrument commenced in the form of a bond, *Clark* binding himself to *Isaac Belknap, jun.* in the sum of 300 pounds, *New-York* currency. Then followed a condition, in these terms:

" Whereas the said *John Clark*, by a resolution of this state, is entitled to a bounty of 500 acres of land, also, a bounty of 100, by congress, under such restrictions, and such conveyances, as by a law of the state is, or shall be, fixed and determined on; and whereas, until such law shall be passed, the said *John Clark* has no legal title in, or right to convey the same by deed, yet, notwithstanding, for divers good causes and considerations, and of four pounds in hand, paid to him, the said *John Clark*, by the said *Isaac Belknap, jun.*, the receipt whereof is hereby acknowledged, hath, and by these presents doth, grant, bargain, and sell, all and singular, my right, title, and interest of, and in the 600 acres of lands, unto the said *Isaac Belknap, jun.*, to his heirs and assigns forever; and in order more fully to invest the said *Isaac Belknap, jun.* of, and in the premises, I, the said *John Clark*, doth, by these presents, authorize and appoint the said *Isaac Belknap, jun.* my true and lawful attorney, for me, and in my name, and in my place and stead, with lawful and ample power for me, and in my name, to ask, demand, and receive from any person or persons, the necessary certificate, deed, or other conveyance, whereby the said *John Clark* is to be lawfully entitled to said premises, and to do all, and every thing, as fully, and amply, to all intents and purposes in the law, for procuring the same, as I myself might or could do, were I personally there present; hereby ratifying and confirming all what my said attorney shall and may lawfully do, in and about the

premises. Now know all men by these presents, and the conditions of this obligation is such, that if the said *John Clark* shall not, by any means, revoke the power above given to the said *Isaac Belknap, jun.* or otherwise shall, by a legal conveyance in the law, convey the said 600 acres of land, unto the said *Isaac Belknap, jun.,* his heirs and assigns, from and immediately after he shall by law be legally invested in the same; then, and in that case, the above obligation shall be void, else to stand and remain in full force and virtue in the law." This instrument was duly acknowledged and recorded, on the 30th of *July,* 1816.

*Belknap,* on the 28th of *December,* 1789, conveyed the premises to *W. J. Vredenburgh,* who, on the 6th of *August,* 1790, conveyed the same in fee, to *S. Meredith,* under whom the defendants took possession. These several deeds were, on the 3d of *April,* 1795, deposited and registered in the clerk's office of the county of *Albany,* according to law.

*Van Buren,* (Attorney General,) and *Henry,* for the plaintiff, contended, that the bond from *Clark* was not a conveyance of his legal interest, but a mere agreement to convey at a future day; and they relied on the cases of *Jackson, ex dem. Ludlow and others,* v. *Myers,* (3 *Johns. Rep.* 388.) and *Jackson, ex dem. Green,* v. *Clark,* (*Id.* 424.) as in point.

*Cady,* contra, contended, that the act of the 6th of *April,* 1790, sess. 13. ch. 59. gave full operation and effect to antecedent conveyances, by those persons who afterwards obtained patents for bounty lands, and that the title of the patentee became, by virtue of the act, vested in his grantee.

SPENCER, Ch. J. delivered the opinion of the court. If the deed of the 11th of *September,* 1786, from *Clark,* the soldier and patentee, to *Belknap,* can operate as a bargain and sale, then the title of the lessor, *Robert Troup,* is defeated. The 5th section of the act of the 6th of *April,* 1790, (sess. 13. ch. 59. 2d *Greenl.* 333. *Ed. Laws.* ) requires the letters patent to be issued in the names of the persons who have actually served in the line of the army of the *United States ;* and it provides that the lands so to be granted, shall be deemed and adjudged to have vested in the respective

grantors, or their heirs and assigns respectively, on the 27th
of *March*, 1783. And all grants, bargains, sales, devises,
and other dispositions, made by any of the said grantors, of
the said land, so to be granted to them respectively, or any
part thereof, between the 27th day of *March*, in the year last
aforesaid, (1783,) and the date of such letters patent re-
spectively, shall be as good and effectual as if the said let-
ters patent had been granted on the said 27th day of *March*,
in the year last aforesaid.

The title set up by the defendant is under a deed of the
11th of *September*, 1786 ; and if it is effectual to pass *Clark's*
interest in the land, as a conveyance, (*Jackson* v. *Fish*, 10
*Johns. Rep.* 456.) the act gives it effect, although the legal
title was not then vested in *Clark* by letters patent. In
considering this instrument, the lessor of the plaintiff must
be viewed as standing precisely in the situation *Clark* would
have stood, if he were the lessor of the plaintiff, and had
never conveyed ; I mean as regards the legal title to the
premises, and the construction to be put on the deed of the
11th of *September*, 1786.

The plaintiff's counsel have seen fit to rest their cause on
the decision of this Court, in *Jackson* v. *Myers*, (3 *Johns.
Rep.* 388.) and *Jackson* v. *Clark*, (3 *Johns. Rep.* 424.) The
latter case does not require comment. The writing there
was clearly a contract to sell, and not a sale of the land.

In the former case, it appeared, that *Van Kleeck* and *Lud-
low* entered into articles of agreement, under their hands
and seals, in which *Van Kleeck*, for the consideration there-
in after mentioned, granted, bargained, sold and conveyed
certain premises to *Ludlow*, to hold in trust for *William* and
*Gabriel Ludlow*, their heirs and assigns, for ever; and *Van
Kleeck* covenanted to make a good and sufficient deed by
the first of *May* then next; in consideration whereof, *Lud-
low* covenanted, that he and *William Ludlow*, or one of
them, would assign bonds given by persons in the counties
of *Dutchess* and *Albany*, (including *Van Kleeck's* bond to
*Wm. Ludlow*) to the amount of 1,700 pounds ; and the par-
ties mutually agreed to secure the said lands and bonds to
be severally conveyed and assigned, against all confiscations;

NEW-YORK,
May. 1819.

JACKSON
v.
BLODGET.

NEW-YORK, and the articles provided for other contingencies, which it is
May, 1819. needless to detail.  *Kent*, Ch. J. who delivered the opinion

JACKSON of the Court, placed the decision on two points : 1. That
v. the deed was to be considered as a mere article of agree-
BLODGET. ment, and not a conveyance of an estate ; and, 2. That it
would not operate as a bargain and sale, because a use, on
bargain and sale, could not be limited to any other person
than the bargainee.

Though I concurred in result of the opinion expressed on
both points, in this case ; yet, I do not agree, that it governs
the one now under consideration.   I do not assent to all the
illustrations made use of by the Chief Justice, though I have
no doubt that the deed, in the case cited, ought not to have
been considered as a conveyance of the estate.   One of
the considerations urged by the Chief Justice is decisive,
that there was no consideration paid or acknowledged
for the conveyance, but only an agreement that bonds
should thereafter be assigned, and a mutual covenant to
secure the lands and bonds to be conveyed and assigned,
from confiscation; and he pointedly asked, " after this
who can doubt of the intent ?"   It was a controling
circumstance ; for *Van Kleeck* not having received his
consideration money, never meant to part with the es-
tate until that was paid.   The agreement was executory,
and to have construed it to be executed, would have per-
verted the intention of one of the parties, who intended to
retain the estate, until he was paid.   The case was com-
pared to agreements relative to leases, and cases were cited,
showing that where the whole instrument imported that
something ulterior to the agreement was to be done, by
way of a regular lease ; it showed the intent to be, notwith-
standing the words of the demise were *in presenti*, that the
writing was to operate as an agreement for a lease, and not
for the lease itself.

The only case cited where the question arose upon an
instrument set up as a deed, was, that of *Foster* v. *Foster ;*
(1 *Lev.* 55.  1 *Sid.* 82.) and on the peculiar phraseology of
the instrument, and the discrepancies which occurred in
considering it a conveyance, though there were words of

conveyance *in presenti*, the Court held, that the articles rested in covenant, and as preparatory agreements.

Even in reference to what shall be an agreement for a lease, or a lease, no general rule can be laid down. Each case must depend very much on its own circumstances. This is abundantly verified by the case of *Jackson* v. *Kisselbrack*, (10 *Johns. Rep.* 336.) and the cases there cited. In the principal case, there were words of pre- sent demise, and an express stipulation that the de- mised premises were to be surveyed, and a lease to be given; yet we held, that it amounted to a lease *in pre- senti*. In that case I laid down this proposition, that " none of the cases will be found to contradict the position, that when there are apt words of present demise, and to these are superadded a covenant for a further lease, the instru- ment is to be considered a lease, and the covenant as ope- rating in the nature of a covenant for further assurance." In all the cases cited by the Chief Justice, in *Jackson* v. *Myers*, relating to agreements for leases, there were (I ob- served,) no words aptly, and precisely importing present demises; and I referred to the case of *Bracey* and *Nugent*, in error from the Kings Bench in *Ireland*, stated by Lord *Kenyon*, in 5 *Term Rep.* 163. in which there were apt words of present demise, and an express agreement that leases should be drawn and signed. Lord *Kenyon*, speaking of that case, said, the words were express and unequivocal, and could have no other meaning than that given to them; namely, that it should operate as a present demise. The case of *Baxter* v. *Browne*, (2 *Bl. Rep.* 973.) was referred to, as a strong case supporting the same doctrine.

In considering the deed of the 11th of *September*, 1786, it is evident, that the parties did believe, that no legal con- veyance could be made of the lands to which *Clark* might be entitled, under the concurrent resolution of the legislature; but, though this was their opinion and belief, it is equally evident to me, that they meant to have the instrument ope- rate both as an agreement for a conveyance, and also as a present conveyance. It is expressly recited, that *Clark* had no legal title in, or right to, convey the lands by deed; but the instrument goes on to state : " *yet, notwithstanding,*

*for the consideration of 4 pounds, paid by Belknap, hath, and by these presents doth grant, bargain, and sell, all and singular my right, title, and interest of, and in the 600 acres of land, unto the said Isaac Belknap, jun. his heirs and assigns for ever."*

I cannot resist the conclusion, that the parties prudently and cautiously intended to take every chance, that the deed should operate as a present conveyance, if it legally could; but at all events, as an agreement secured by a penalty for a future conveyance.

It is not doubted, I believe, that if the parties intended this as a conveyance, that it could legally operate as a bargain and sale. The case of *Jackson* v. *Fish and another*, (10 *Johns. Rep.* 456.) is to this point. The deed there was from the soldier, to whom a patent had been granted for military lands: the patent issued the 3d of *July*, 1790, and the conveyance was on the 3d of *April*, 1783. The words of conveyance were *remise, release, and for ever quit claim*, and we held these words sufficient, as a bargain and sale, to raise a trust or use, for the benefit of the bargainee.

If we advert to some of the settled and well-defined rules of construction, as applicable to conveyances of land, the conclusion, I think, is inevitable, that we are bound to construe the deed from *Clark* to *Belknap* as a present conveyance of the land.

The construction ought to be made on the entire deed, and not merely upon any particular part of it ; and, therefore, every part of a deed ought, if possible, to take effect, and every word to operate. A deed, and especially a deed poll, is always construed most strongly against the grantor. If a deed cannot operate in the manner intended by the parties, the judges will endeavour to construe it in such a way as that it shall operate in some other manner ; it being a maxim *quando quod ago, non valet ut ago, valeat quantum valere potest.* Upon this principle, it has been determined, that a deed which was intended to operate as a lease and release, but could not take effect in that manner, was good as a covenant to stand seised. Where a deed may enure in different ways, the person to whom it is made shall have his election which way to take it, and he may take it that way

as shall be most for his advantage. (4 *Cruise's Dig.* tit. 32.
c. 23. *Shephard's Touchst.* 82, 83.) These principles are
the landmarks on which real property essentially depends.
In *Goodtitle* v. *Bailey*, (*Cowp.* 600.) Lord *Mansfield* said,
the rules laid down in respect to the construction of deeds
are formed in law, reason, and common sense; that they
shall operate according to the intention of the parties, if
by law they may, and if they cannot operate in one form,
they shall operate in that which by law will effectuate the
intention.

Now, I cannot bring my mind to doubt that it was the in-
tention of the parties to the deed of 1786, that *Belknap*
should acquire and have the bounty lands to which *Clarke*
was to be entitled. They adopt two modes to effectuate that
purpose; the one by an agreement for a future conveyance,
supposing that the lands could not then be conveyed; the
other, lest, peradventure, they were in an error, by a direct
and immediate conveyance. When the deed given is suffi-
cient to carry their primary intention into effect, by up-
holding it, as a present conveyance, I am at a loss for a rea-
son why we should not construe the deed so as to effectu-
ate the intention of the parties, when, by law, we may.

I think I have shown, that the leading features of this
case, are entirely dissimilar to that of *Jackson* v. *Myers.*
In this case the consideration was paid, and nothing more
was to be done by the grantor than to make a further assu-
rance: in that case, the consideration money was to be
paid, and to have construed the instrument as a conveyance,
would have been inequitable and unjust, as between the
parties.

If the patentee himself was seeking to recover the lands,
can there be a doubt that we should, as against him, con-
strue his deed to be a conveyance? If so, the lessor of the
plaintiff stands in no better situation, and cannot, with more
success, object to the deed.

Judgment for the defendant.