B. Gellespi, Esq., one of the special judges,
delivered the opinion of the court.
. The bill in the court below was filed upon the following state' of facts.
The state of Georgia, in the year 1784, passed an act by which John Donaldson, William Downs et al., were appointed commissioners to examine the tract of country in the Tennessee Bend, issue warrants and make surveys. These services were pet-formed, and in the year 1785, an act or resolution of the same legislature was passed allowing to each one of the persons employed in the performance of those services 10,000 acres of land, to be located by them on the Tennessee river. That subsequently a cession of the tract of country on which the location was to have been made was made by the state of Georgia to the government of the United States. In consequence of which the persons entitled to the claims aforesaid, could not make their locations, and perfect their titles, but had to rely on the justice of the government of the United States.
In the year 1802, William Downs, one of the aforesaid commissioners, in consideration of 3000 dollars, sold and conveyed to his two sons Henry D. and Joseph Downs, by deed, his claim upon the state of Georgia, and by the same acknowledged, that he had received the note of the said. Henry D. and Joseph for the said 3000 dollars, “ for which the said Henry D. and *923 Joseph, their heirs and assigns, are hereby entitled to whatever quantity of land said state of Georgia, or the United States may think proper to allow me.”
On the 7th day of January, 1815, the said Joseph Downs, in consideration that Henry D. had made the payments, which were the consideration of the deed aforesaid, by an endorsement in writing under seal on the deed itself, transferred all his right and title to the claim in said deed mentioned to the said Henry D. Downs.
In the year 1824, the congress of the United States recognised the claim of the said William Downs, who had previously departed this life, and to settle this claim authorised his heirs and legal representatives, to enter in any of the offices in Mississippi- or Alabama 5000 acres of land, provided the said 5000 acres be taken in full satisfaction of the said claim on the state of Georgia.
That afterwards entries were made in the Choctaw District to the amount of the said 5000 acres, in the name of Henry D. Downs, representative of the said William Downs, deceased, but as it is alleged, through mistake patents were issued in the name of the heirs of William Downs, deceased.
The heirs and representatives of Henry D. Downs, after his death took possession of the lands or part of them, sold and agreed to sell a considerable portion thereof to various individuals,, all of whom, or those claiming under them, are in possession.
The bill prays that the title vested by the patents to the heirs of William Downs, from the government of the United States, be divested out of them and vested in the complainants, and an injunction to proceedings of partition which had been instituted in the orphans’ court of Warren county, and for general relief.
The answer of those of the defendants, who were of the heirs of William Downs, deceased, admit the material allegations of the bill, with the exception of those in relation to the deed from the said William to the said Henry D. and Joseph, in relation to which they aver, that they believe the said deed, and every thing connected with it, to be a forgery, and require strict proof.
The deed purports to be witnessed by one William Hutcheson.
The depositions of two witnesses are taken, and by them it is *924 proved, that William Hutcheson, who about the date of said deed lived in that part of the country, a short time after the date thereof ran off; that it was afterwards reported he was dead, and that he has not since been heard of. The witnesses then prove the signature of William Downs to the deed, and that they had heard him acknowledge he had sold his claim to the said 10,000 acres of land to the said Henry D. and Joseph Downs, and said witnesses also prove the hand writing of the said Joseph to the transfer, and had heard him acknowledge that it was made for a full consideration.
On the final hearing in the court below, the chancellor pronounced a decree, by which the defendants below, who were of the heirs of William Downs, deceased, were directed to convey to the complainants, by quit claim, their interest in said lands, and enjoining the proceedings of partition; and to reverse this decree the cause is brought to this court.
Before examining the merits involved in this cause, it becomes necessary to dispose of a preliminary question, which has been made in the argument. It is insisted by the appellants, that the deed, which is the foundation of the title of the appellees, has not been regularly proved, and therefore cannot be made the basi sof a decree.
It is true as insisted, that a deed which is intended to be set up as the foundation of a right, cannot be read unless it be first proved according to the rules of law, some of which we will notice.
When there is a subscribing witness he must be produced, or his absence satisfactorily accounted for, as by proving that he was dead, cannot be found, or gone beyond the jurisdiction of the court. 1 Starkie on Evidence, 329.
When the absence of the subscribing witness is properly accounted for, then the proof of the deed may be made by proof of the handwriting of the subscribing witness to the deed, or by proof of an acknowledgment by the obligor as maker that he owed the debt, or had executed the deed, and also the handwriting of the obligor or maker of the deed. 1 Starkie, 340, 341; Douglass, 93, 214; 7 Conyer’s Digest, B. 3, 430; 1 Hay. N. C. Reps. 238.
*925 Apply these principles and rules of law to the question now under consideration, and it will be found that they have been fully complied with. Hutcheson, the subscribing witness, was proved to have gone from the state, was reported to be dead, and has never been heard of since. It is then proved that the maker of the deed acknowledged to the witness that he had sold to the bargainees in the deed, and the handwriting or signature of William Downs was proved, and the same in relation to the transfer of Joseph to the said Henry D. In this the rule is complied with, not only in the spirit but in the very Letter. But it is insisted in the argument, that in proof of a deed, two things are necessary; first, sealing; and, secondly, delivery; and proof by the witness himself or of his signature is necessary because of the presumption of law that, when the handwriting of the witness is proved, it is evidence of sealing and delivery, these being the facts to which, by the terms used m attesting, the witness is particularly called to observe. This, no doubt, is true; but these facts, as are shown by the authorities before cited, can be as well or better proved otherwise than by proof of the handwriting of the witness. The proof by the witness raises but a presumption, while the proof of the acknowledgment, and of the signature of the bargainor, is proof direct of that which, by the other mode, would only be a presumption. It is not intended to intimate that one or the other mode of proof would not be good; it is clear that either may be resorted to.
But were there a doubt that under ordinary circumstances this deed was not correctly proved, the circumstances in the case furnish ample grounds, not for the relaxation of the rules of evidence, but for the presumption that the evidence which has been adduced is the best which is now in the power of the complainants to produce. The deed bears date in 1802, twenty-nine years before the filing of this bill by the complainants. After so great a lapse of time it requires no great latitude in the raising of presumptions, to suppose that the parties interested in the deed had it not in their power to make proof of a higher character than that which is now made.
The deed, then, was correctly proved. Having disposed of the *926 only preliminary question which we at all deem important to notice, we will now proceed to the examination of the questions involving the merits of this cause.
1. What interest had William Downs, at the time of the deed, to Henry D. and Joseph Downs?
It is here insisted that he had no interest, which was the subject of a grant or conveyance; that he had a bare “possibility.” Let us see how this is. The act or resolution of Georgia declares that 10,000 acres of land shall be allowed to William Downs, to be laid oif by him on the Tennessee river. The terms used clearly vest a present interest. “ Allowed” when and how? At the passage of the act, and by virtue thereof. At what place? On the Tennessee river. It is true that the grant is not located to any particular spot or piece of ground, by metes and bounds, and no right to enjoy any such was vested by the act of Georgia at the time of its passage, but an interest was vested at that time which, by an act to be done by the party themselves is to vest an interest or right to a definite and particular tract of land, and which it needed not further enactment to vest in him who was the subject of the grant. This view of the subject, were there any doubt, will be found to be amply sustained by authority. See Rutherford v. Greene’s Heirs, 2 Wheat. 196. That was a case in the supreme court of the United States, and decided by that great luminary of the law, Chief Justice Marshall. The question arose upon an act of the North Carolina legislature, which in substance enacted “that there should be allowed” to Major General Nathaniel Greene 25,000 acres of land in the tract of country set apart to the officers and soldiers of the North Carolina line in the war of the revolution. In that case, as in this, it was insisted, that the act vested no present interest; the terms used were not in the present tense, but prospective merely: but the court decided that the terms “ shall be allowed” vested a present interest in General Greene, which was an obligation upon the government, and, that when the allotment took place the interest was established in the land by relation from the date of the act of the legislature.
Again; it is insisted that the right of William Downs, if any he had, was lost by the act of cession by Georgia to the general *927 government, and that, therefore, there was nothing upon which the deed could operate. This proposition is clearly untenable. The act of Georgia, it has been shown, granted to William Downs, 10,000 acres of land, in consideration of services previously performed for the state. The legislative act was an agreement upon a good consideration, and was binding upon that government, and a transfer of the domain, to the general government, was clogged with the grant, and the previously vested right would be a claim subsisting, and which justice would require to be satisfied. It is evident this is the view which congress took of the question. The act of congress of 1824, in terms re-cognises the claim, and gives not a gratuity to the heirs of William Downs, but was a confirmation of the grant of Georgia. The general gift of 10,000 acres of land by Georgia, had now become the particular gift by the general government, of the 5000 acres; and this last act gave precision to that title, and attached it to the land surveyed, and is completed by the patent, which relates to the inception of the title.
We have shown that an interest was vested. What was the nature of that interest? Was it an interest, such as could be granted, sold or conveyed? Would it descend to the heirs? Or was it a thing so intangible, that none of those incidents attached to it? This can be settled by looking at things of a like kind; a land warrant, as it is called in some of the western states. This is a certificate issued by a ministerial officer of the government, directed to a surveyor, commanding him to survey and lay off for the person named in it, a certain quantity of land, in a given boundary, and was to be issued by the direction of law to an individual, in consideration of valuable services performed, or for money paid. The certificate was not issued directly by the state but its officers.
What were the incidents of these kind of claims? Were they subjects of grants? Could they be inherited? They were constantly sold and transferred, and were the subject of inheritance. See Dunlop v. Gibbs, 4 Yerger’s Rep. 94. In what respect is the claim under consideration to be distinguished from a land warrant? In none except the person who gives the direction to sur *928 vey, and in both the law fixes the right, in consideration of services, or the payment of money. In one, a ministerial officer, under the direction of the law, gives the command which fixes the right, and in the other, the consideration having passed, the act itself gives the command, and thereby fixes the right.
The next question which arises, Has William Downs disposed of his right, and what is the force and effect of his deed? The disposition which has been made of the preliminary question as to the proof of the deed, disposes of one branch of this inquiry. As to the other. The act of Georgia, it has been seen, vested an interest; that interest was sold by deed, and by it the bargain or 'covenants, that the bargainees shall have all the land which might be procured from the state of Georgia, or from the United States. Subsequently, the congress of the United States autho-rises 5000 acres to be entered, which is done, and patents issued by the government to the heirs of the bargainor. As before shown, these latter acts are a recognition of the previous right existing under the Georgia law, and by relation vested the absolute fee in the land, designated in the entries, from the date of the previous grant. The law of Georgia, the act of congress, the making the entries, and the issuing of the patents, were each of them necessary to be done, and without them, a complete title could not be had. When the first was done, an incipient or inchoate legal estate vested, and when the last was completed, like livery .of seisin, upon a feoffment, it had a relation back to the first, and from that moment, vested the complete legal estate. Walker’s Rep. 91; 5 Cranch, 551 and 554: 3 East, 432.
Had William Downs been in existence at the date of the patents the complete legal estate would have vested in him, but he had departed this life, and by the direction of the act of congress the patents were issued to his heirs, &c., and but for this the estate would have vested in Henry D. Downs by operation of law. 4 Wheaton, 229; 12 Johns. Rep. 201; 1 Johns. Cases, 90.
But such was not the operation upon the deed from William Downs to said Henry D. and Joseph Downs. The complete legal estate did not vest in William during his life, and as we understand the authorities, when a deed is made by a party who has *929 not title, in order that his subsequently acquired estate in the same property conveyed by the deed, may vest in his bargainees by operation of law. It is necessaiy that the subsequently acquired estate should vest in him before his death, and not be acquired by his heirs. The deed then did not operate to vest in Henry D. Downs the fee, which was subsequently acquired. How then did it operate? It operated clearly as a covenant, on the part of William Downs, to stand seised of such an estate as should be subsequently acquired for the use of said Henry D. Downs. The rule is well settled, that where a deed cannot operate in such a manner as it'was intended, it shall be construed in such a way as to effectuate the intention of the parties, if possible. 16 Johns. 172.
The bargain by the deed was made and the purchase money paid. The payment of the purchase money raised the use upon which the law attached a covenant to stand seised, and had William Downs been living and a patent been issued to him, the statute would have executed the use by vesting the possession. But before this he had departed this life, and the property upon the issuing of the patents vested in his heirs, who now hold the legal estate, incumbered with the covenant to stand seised, and it must be enforced by declaring them trustees of the legal estate, for the irse of the bargainees in the deed or their heirs.
The opinion of the court is that the decree of the chancellor he affirmed.