## BECTON ET AL. *vs.* SELLECK ET AL.

[BILL IN EQUITY TO FORECLOSE MORTGAGE.]

1. *Married woman, owner of separate statutory estate; what power has as to collection of debts due her.*—A married woman, a citizen of this State, who is the owner of a statutory separate estate, is clothed by law with the power to collect her debts, by suit or otherwise, and to "receive," with the concurrence of her husband, any property to which she may become entitled after her marriage.—Rev. Code, § 2525, 2375, 2372.

2. *Same.*—In the exercise of this power, she acts without restraint, except that which may be imposed by her husband as her trustee. In collecting a debt or sum of money, to which she is entitled, she may take *land* in lieu of *money.* And in dividing the proceeds of a promissory note, in which her interest is one-fourth part, and the note is paid by a transfer of land, and the land is valued at more than her share, if she takes the land, she may pay the balance above her share in money or bind herself by her own and her husband's promissory note for this balance, and secure the payment of the note thus given by mortgage on the land thus "received" in lieu of her part of the note thus collected ; provided the note and mortgage are executed as required by the law governing the "separate estate of wife."

3. *Same; when mortgage signed by married woman and her husband may be enforced against both.*—Such mortgage may be foreclosed against the wife and her husband if she fails to pay the note when due, which has been thus entered into.

APPEAL from the Chancery Court of Dallas.
Heard before Hon. CHARLES TURNER.

The case is sufficiently set forth in the opinion.

FELLOWS & JOHN, for appellants.
BROOKS, HARRALSON & ROY, *contra.*

[No briefs came into the Reporter's hands.]

PETERS, J.—This is a suit in chancery, commenced by the appellants, who are minors, against the appellees. There was an original bill and two amended bills, and the purpose of the suit is to foreclose a mortgage, executed by William Selleck and Caroline Selleck, who, at the time of

its execution, were husband and wife, and citizens of this State. The facts set out in the pleadings, so far as they are material, are about these: On the 2d day of February, 1866, Frederick S. Becton, *Senior*, who was the uncle of Mrs. Selleck, and the step-father, or father by adoption, of the appellants, conveyed by deed, of the above date, to James Kent, as trustee, a considerable amount of property, consisting of money, bank certificates of deposit, and promissory notes, which are named in the deed, for the use of said William Selleck, and his wife, Caroline Selleck, and the appellants, the said Benjamin and Frederick Becton, who were then minors. This deed was made in this State. Kent, the trustee, was authorized by it to collect the sums of money thus conveyed, to satisfy the expenses of executing the trust, and to pay the balance as follows: that is to say, *one-fourth* to said William Selleck; *one other fourth* to said Caroline Selleck, his wife, and to hold the *other half* of the money thus conveyed for the use of the appellants, said Benjamin and Frederick Becton, (who were then minors,) until they became of age, and then pay it over to them. Among the claims thus conveyed to Kent, as such trustee, to hold under said deed of trust, was a promissory note, on Joseph J. Alston, for $15,000, which bore date December 5, 1865, and became due in twelve months after date. Alston was a citizen of New Orleans, in Louisiana, and of somewhat doubtful solvency. He owned a house and lot in the city of Selma, in this State, which he was willing to surrender in payment of his note, at an estimated value of $12,000, and pay the balance on his note in money. Mrs. Selleck and her husband, said William Selleck, were the owners, as the beneficiaries in the deed to Kent, each of the *one-fourth* part of said note, and they were willing to collect their interests in said debt on Alston, by taking the house and lot in lieu of the money. But the estimated value of the house and lot exceeded their portion of the note on Alston, by a little above the sum of four thousand dollars; and the collection could not be effected in this way, unless they consented to pay to Kent, for the use of the other beneficia-

ries under the deed, the residue of the estimated value of
the house and lot, above their shares of the Alston note.
This residue was fixed at the sum of $4,148.33. For this
sum Selleck and wife executed their note to Kent, as trus-
tee as aforesaid, bearing date the 1st day of July, 1866;
and on the same day this note of Selleck and wife bears
date, they executed a joint mortgage on the house and lot
they had thus received in collection of their part of the
Alston note for $15,000. Under this arrangement they
received Alston's title to the house and lot, his note was
given up to him, and the Alston debt was thus collected.
When the note of Mrs. Selleck and her husband, secured
by the mortgage, fell due, it was not paid. Upon this the
Bectons, the appellees in this court and beneficiaries in the
deed to Kent, to whom this note belongs, and who were
then still minors, bring their bill by their trustee and next
friend, against Selleck and wife, said mortgagors, to fore-
close the said mortgage. Mrs. Selleck sets up in her
defense that she was a married woman, an inhabitant and
citizen of this State at the time of making said note for
$4,148.33, and mortgage to secure the same to Kent, and
that the property conveyed by her in said mortgage is her
statutory separate estate, held under the Code of this
State, and that as to her, the note and mortgage are void,
and without any binding effect. Selleck, the husband of
Mrs. Selleck, made no defense. The learned chancellor in
the court below decreed a foreclosure as to Selleck, but
refused it as to his wife. The other parties to the suit are
merely nominal. From the decree of the chancellor the
complainants in the court below appeal to this court, and
here insist that the decree of chancellor should have
included in the foreclosure, the interest of Mrs. Selleck as
well as that of her husband.

There was a demurrer to the bill by Mrs. Selleck in the
court below, and I notice it simply to say that the facts
contained in the original bill, and the amended bills, per-
tain to the same subject matter. They are the history of
one transaction. They do not constitute two cases. Such
amendments are not objectionable on account of a seem-

ing departure in the amendments from the case made in the original bill. The bill was, therefore, properly retained.

Our legislation, to *secure* to married women their own estates, is esteemed a novelty in our system of laws. It runs counter to the practice and the principles of a thousand years, sanctioned by names of the highest authority in a profession where the opinion of such men more or less shape the laws themselves, and control the system of reasoning which belongs to their construction. Then, under the law of our Code, it is not to be expected that cases involving the wife's rights over her estate will run smoothly in the old ruts. The law, whatever may be the judicial prejudice against its policy, is not to be defeated by construction, but should be upheld. It is proper, when we can, to resort to first principles, to give it vitality. The intent of the law is that which should govern in its application to the real affairs of life. What the opinions of distinguished and learned foreign judges and lawyers may be upon questions arising under their own systems, is nothing to us, under ours. One of the glories of this great nation is, that it needs no foreign aid to enable it to do its duty to its own citizens, or to those who come to deal or to reside with us. We are quite as able to be leaders as to be led. It is a happy thing in our country, that no man need to be born with a ring in his nose, or a yoke upon his neck; and as long as we make our own laws, and execute them, with an eye single to the highest interest of our own people, we will not be likely soon to forfeit the birth of all free men—that is, the right to shape their institutions to suit their *own* national growth.

It seems obvious, that, under our statute to *secure* the property of married women to them, for their own separate use, they are clothed with full power to reduce such property to their possession. This may be effected by suit or without suit. This is clearly necessary to a full exercise of such dominion over it, as has been bestowed upon them by the law. The wife may collect her debts, or recover possession of her own property by action at law in her own name.—Rev. Code, § 2525. Then, she may do without suit

what she may do by it, when the purpose is the same. Or, in the language of the Code, she may "*receive*" her property.—Rev. Code, § 2388. To what extent her husband may interfere with her right, in this respect, as her trustee, need not be discussed in this opinion, as nothing of that kind arises in this case. Here, the husband concurred in all the wife did. And whether she may proceed to collect her debts or to get possession of her property by suit, or "*receive*" it without suit, she must be allowed the use of the means permitted by law for the accomplishment of such an end. She is not bound to sue, when by some other arrangement she may much more certainly promote her interests. Of this, if there is no fraud or deceitful dealings, she and her husband must be left to judge for themselves. She may then submit to arbitration, or compromise a doubtful claim, and bind herself by a proper contract to the result. In collecting her debts, she may *receive* money, or, in lieu of money, some specific property that suits her as well. If she sues, she may employ an attorney and contract for the payment of his fees. But this power belongs to her as an incident of her right under the Code to collect her own debts, and to reduce her own property to her possession, or to "*receive*" it. It is a maxim of construction, that if the power is given, and there is no necessary or express limitation, it is given with all the means to make the gift effectual. This principle is universal and axiomatic. It has passed beyond the necessity of a resort to logic for its demonstration. *Quando lex aliquid alicui concedet, concedere videtur id, sine quo, res ipsa esse non potest.*—5 Coke, 47; 3 Kent, 421; Coke 2 Inst. 326; 15 Barb. 153, 160; 8 Mass. 129; Broom's Max. 203 *et seq.* (marg. pages.) In such a transaction the wife does not act as a *feme sole* or a *free-dealer*, because she can not do this until the trust is destroyed by a decree of the court of chancery.—Rev. Code, § 2384, 2372. The statute is not designed to make the wife a *feme sole* trader, else sections 2384 and 2372 of the Revised Code would be destitute of meaning. This is also not the legislative understanding of this law. Otherwise, it would not be necessary to make

any woman, who is married, a free-dealer, who has a sep-
arate estate, or who might subsequently acquire one. Yet
this is a very common practice of the general assembly.
*Vide* Index to Acts 1870, 1871, p. 335, 336, and the cases
there referred to. And in conformity to this usage and
construction, this court has heretofore held, that the Code
does not make the wife a *free-dealer*, or a *feme sole* general
trader, but clothes her only with special powers.—*Cheat-
ham v. Wilkinson*, 45 Ala. 337; *Cowles et al. v. Marks*, Jan-
uary term, 1872. Yet, at the same time, it is not intimated
that she is limited in any of her rights to collect her debts,
or to reduce her property to her possession, or to the pos-
session of her husband, for her use.—Rev. Code, § 2372,
2379; *Glenn v. Glenn*, January term, 1872; *Marsh, adm'r,
v. Marsh*, 43 Ala. 677. Here, the transaction was not a
loan of money by Kent, the trustee, but an arrangement
by Mrs. Selleck and her husband to collect their portions
of the Alston note. Such a transaction she could legally
enter into, so far, at least, as her own portion of the Alston
debt was concerned. As an arrangement to collect her
debt, she could " receive " the land, and charge her portion
with the payment of her part of the surplus above her in-
terest in the debt—that is, one-half of the note to Kent,
executed by her husband and herself, on the 1st day of
July, 1866. Beyond this she is not liable on the note to
Kent, or the mortgage. The balance, above her own por-
tion of this note, is her husband's debt. For this she can
not make herself liable as his surety or otherwise.—Rev.
Code, § 2371; *Cheatham v. Wilkinson*, 45 Ala. 337, *supra ;
Bibb v. Pope*, 43 Ala. 190. Very evidently, both by the
note to Kent and the mortgage to secure it, Mrs. Selleck
intended to bind herself to the extent of her legal liability,
if no more. To this extent, then, she ought to be bound.
Such effect must be given to her contracts as the law will
enforce her to perform. *Quando res non valet ut ago,
valeat quantum valere potest.*—3 Barb. Ch. R. 242. 261 ;
Broom's Max. 75, 76, *marg. ; Jackson ex dem. v. Blodget,*
16 Johns. 172, 178, 179. The decree of the court below
was correct so far as it went, but it did not go far enough.

Mrs. Selleck, in collecting her portion of the claim against Alston, had had the benefit of one-half of the note to Kent. To this extent, she should have been charged. It should, therefore, have been referred to the register, as master, to ascertain and report this amount, with interest included, up to the date of the report, and there should have been a decree and foreclosure for this amount against Mrs. Selleck. For this error the decree of the court below is reversed, and the cause is remanded, with instructions to proceed in its further disposition in the court below, in conformity with the principles of this opinion.

The costs of this appeal in this court and in the court below, will be paid by the said Caroline Selleck.