# Marks *v.* Cowles *et al.*

### *Bill in Equity to Quiet Title, &c.*

1. *Husband and wife; power of to purchase and mortgage lands.*—There is nothing in our statutes creating the separate estate of the wife which forbids husband and wife from purchasing real estate for the latter, accepting a conveyance to her, and cotemporaneously executing a mortgage on the land to secure the purchase money.

2. *Same; effect of payment of purchase money with corpus of wife's estate.*—The use of moneys constituting the *corpus* of the wife's statutory estate in part payment of the purchase money cannot authorize the wife, during coverture, to repudiate the transaction, nor give her an equity, when foreclosure of the mortgage is sought, to charge the lands with the reimbursement of her money used in paying for them.

3. *Same; rights of mortgagee.*—While such a purchase imposes no personal liability on the wife, and creates no charge against her statutory estate, the conveyance and mortgage are valid, and the mortgagee is entitled to his decree for foreclosure if the purchase money is not paid.

4. *Husband; rights and duties as trustee of the statutory estate of wife.*—Under our statutes, the husband, as trustee of the wife, has power, with the concurrence of the wife, to invest moneys the *corpus* of her statutory estate in the purchase of lands.

5. *Same.*—The statutes require the husband to "manage and control" the estate of the wife, with the view of preserving it, and making it productive of income and promotive of the comfort of the family; and keeping these ends in view, he may make such investments of the wife's money as he may deem best.

6. *Overruled case.*—Cowles v. Marks, 47 Ala. 612, overruled.

APPEAL from Chancery Court of Montgomery.
Heard before Hon. A. C. FELDER.
The opinion states the case.

P. T. SAYRE, for appellant.

ELMORE & GUNTER, *contra.*

BRICKELL, C. J.—This cause was before this court at the January term, 1872, and the opinion then pronounced is reported. *Cowles* v. *Marks*, 47 Ala. 612. There has been no new fact introduced which authorizes a change or modification of the former decision, and the decree of the chancellor conforms strictly to it. Prior to the statute (R. C. § 3510), the rule, frequently announced and rigidly adhered to, was, that a decision of this court, however erroneous,

[Marks v. Cowles.]

was the law of the particular case in which it was rendered, and could not be questioned in the primary court, or on a second appeal. Until there was such a change of facts as rendered the decision inapplicable, error could not be imputed to the primary court, because it conformed its judgment to the decision. But for the statute, our duty would be an affirmance of the decree of the chancellor, because of its conformity to the former decision, without permitting an inquiry into its correctness. The statute was intended to abrogate this rule, never satisfactory to many members of the profession, and is imperative in its terms, devolving on the court the duty of inquiring into and declaring the law of the case, as if the former decision had not been made. The policy of the statute is not a matter for our consideration. It may protract litigation, impair the dignity of the judgments of the court of last resort, and may introduce and foster a want of confidence in the administration of the law. Its enactment was within legislative competency, and obedience to it is our only duty.

The admitted facts are, that Laura S. Cowles, a married woman, having a statutory separate estate, with the concurrence of her husband, purchased of John B. Scott a tract of land adjoining a plantation held by her, which was necessary to the profitable use and enjoyment of the plantation, adding to its value more than the price contracted to be paid. Mrs. C. paid a part of the purchase money in cash, and for the remainder executed promissory notes, in which her husband joined. A conveyance of the land was made to her by Scott, and she and her husband cotemporaneously executed a mortgage, properly attested, to secure the payment of the promissory notes. Subsequently, she made a payment on one of the notes. Possession of the lands followed the sale and conveyance, and for near ten years before the filing of this bill they were used and occupied in connection with said plantation.

Payment of the notes given for the purchase money not having been made, under a power in the mortgage, sale was made of the lands, and the appellant became the purchaser. He sued in ejectment for the recovery of the lands, and defense was made on the ground that the mortgage was void because of Mrs. Cowles' coverture. This bill was filed by appellant to quiet his title to the lands. Mrs. Cowles answered and filed a cross-bill, alleging her incapacity to make the purchase, accept the conveyance, and execute the mortgage; that the whole transaction was a nullity, and she had an equity to charge the lands with the repayment to her

of the moneys she had paid, in priority of any lien for the amount due on the notes for the purchase money.

The case presents two questions, which may be thus stated : can husband and wife, in the name of and for the wife, purchase real estate, accept a conveyance, and cotemporaneously execute a mortgage of the estate as security for the payment of the purchase money ?  If on such purchase, moneys, the *corpus* of the wife's statutory separate estate, are paid to the vendor, can the wife subsequently, during coverture, repudiate the transaction, and claim that the lands be charged with the repayment to her of such moneys ? The former opinion asserts the incapacity of the wife, declares the transaction void, and that a trust results to her to charge the lands with so much of her moneys as were invested in the purchase.

We propose to consider these questions separately.  The incapacity of the wife, with or without the concurrence of her husband, to purchase and accept a conveyance of real estate, if it exists, is derived either from the common law, or from statute.  The husband concurring, there could at common law be no question, during coverture, of the validity of the purchase and conveyance.  Without his concurrence, its effect depended on considerations deducible from the principle by which husband and wife were regarded as but one person, and her legal existence suspended during the matrimonial union.  The wife had not capacity to bind herself; but the want of capacity was not the result of a want of discretion, imputed to her as matter of law, as it was imputed to infants.  It was founded on the character and nature of the relation of marriage, which placed her under the power and protection of her husband, deprived her of the administration of property, and transferred to him dominion over all property, real or personal, of which she was seized or possessed, or of which a right of *seisin* or possession accrued during coverture.  The personal property of the wife in possession passed, on the marriage, to the husband, and that which lay in action became his on its reduction to possession.  Of the lands of the wife, of which she had an estate of inheritance, he became seized, entitled to the rents and profits during their joint lives, and by possibility during his life.  Deprived of the administration of property, subjected to the power and protection of her husband, incapable of suit to which he was not a party, her incapacity to contract was a logical and legal sequence.  In the obligation of her contracts, if capacity could have been imputed to her, the husband would have been bound, for

[Marks v. Cowles.]

they could operate only on property to which the law gave him title, absolute or qualified. Or, it may have been the wife had brought him no fortune, and such contracts would have vested the wife with an indirect power of charging his estate. The harmony of the relation would have been disturbed by conflicts between them as to the contracts which should be made, and the inconsistent duties their several contracts might involve. These were the considerations on which the common law pronounced the general incapacity of the wife to contract. There were exceptions to the general rule, dictated by reason and justice. A recognized exception was, that the wife could purchase an estate in fee without her husband's consent, and the conveyance was good, if the husband did not avoid it by some act declaring his dissent; and after the husband's death, the wife could waive or disagree to the purchase. 2 Kent, 150; 1 Thomas' Coke, 105; 2 Bright on Husband and Wife, 38. If the husband neither agreed nor disagreed, the purchase by the wife was good. She could take an estate upon condition, and was bound to perform the condition, "because it does not charge her person, but the land." *Patterson* v. *Robinson*, 25 Penn. (1 Casey), 81. In the case before us, the husband expressly assented to the purchase made by the wife, and the conveyance made to her. At common law, the purchase and conveyance would be valid, subject only to the power of the wife to disaffirm on the termination of her coverture—a power she was incapable of exercising during coverture, for the same reasons she was incapable of contracting. Taking an estate in fee, the husband acquired rights she could not divest. If duty or responsibility attended these rights, his assent to the purchase and conveyance was his voluntary subjection to them.

If the case was determinable on common law authorities and principles, the former opinion, affirming the incapacity of the wife, would be erroneous. Her incapacity to purchase, and to accept a conveyance, absolute, or on condition, could not be asserted; and if it could be, she would be equally incapable, during coverture, of disaffirming or avoiding. Disaffirmance, or avoidance, would lie only within the power of the husband during the coverture, and was not within his power after having once elected to assent.

It is a rule of very general, if not of universal application in a court of equity, that a deed conveying lands unconditionally, and a mortgage made by the grantee to secure the payment of the purchase money, cotemporaneously executed, constitute one transaction. The two are read together, as if

[Marks v. Cowles.]

they were but parts of a common instrument; and, practically, the legal effect is that the grantor in the conveyance, absolute in form, really creates in the grantee an estate on condition, becoming absolute only on the payment of the purchase money. If, at common law, such a deed was made to the wife, and such a mortgage was executed by her, without the consent of her husband, in a court of equity she would be deemed and treated as the trustee of the grantor, and the land would be subject to the payment of the purchase money she had agreed to pay. 1 Bish. Married Women, § 600; *Hatch* v. *Morris*, 3 Edw. Ch. 313; *Ramborger* v. *Ingraham*, 38 Penn. (2 Wright), 146; *Patterson* v. *Robinson, supra.* If such a transaction was assented to by the husband, a court of equity would compel him and the wife to execute a valid mortgage to secure the payment of the purchase money. *Leach* v. *Noyes*, 45 N. H. 364. No personal liability was in either case fixed on the wife, and no personal judgment or decree could be rendered against her. The land only was charged with the payment of the consideration money. These principles of the common law, and of equity, are of full force in this State, unimpaired by legislation. We have statutes enlarging the capacity of the wife to hold property, freeing her estate, real or personal, from the common law marital rights of the husband, and empowering her to make conveyances into which she could not enter at common law. We have no statutes abridging her capacity to contract as recognized at common law, or subjecting her to new disabilities.

At common law, if the wife, in making such purchase, parted with personal property, it was not hers, but the property of the husband. Of consequence, parting with such property could not raise any trust or equity in her favor to charge the land with reimbursement if her husband dissented, or after the termination of coverture she disaffirmed. The husband, assenting, could not claim such property; and if he dissented, his remedy was at law for the conversion or detention of the property, or if it was money, in an action for money had and received, to which he was entitled *ex æquo et bono.* If the money was of the equitable separate estate of the wife, as to that estate, in a court of equity, she was deemed a *feme sole,* and no question of her capacity could be raised. In the absence of statutes changing the common law, the mortgage executed by husband and wife, in the mode prescribed for the conveyance of the wife's real estate, is a valid security.

The former opinion pronounced in this cause proceeds on

the hypothesis that the statutes creating the separate estates of married women—or, more properly speaking, freeing the property of the wife from the marital rights of the husband, as declared and defined at common law—and prescribing the mode in which her property is to be held and alienated, so limits and narrows her capacity that she cannot, with the concurrence of the husband, purchase lands and take a conveyance in fee.

We have already said the statute does not diminish the capacity of the wife as recognized at common law. She has now, as she had at common law, as full capacity to take and receive property, real or personal, as if *sole*. Her incapacity was, at common law, to hold and transmit. 1 Bish. Mar. Women, § 699. It is to this incapacity, and not to her capacity to take and receive, the statute refers. The incapacity is removed to a large extent. The wife may not only take, but she holds and transmits, subject to the provisions of the statute, as if she was *sole*. If holding and transmitting involves a personal liability, she is incapable of incurring it under the statute, as she was at common law, for the simple reason that, though her capacity of holding and transmitting is enlarged, she is still *sub potestate viri*, and the capacity to incur such liability is not conferred; consequently, the common law prohibition against incurring it remains of full force. Such, in effect, was the decision of this court in *Becton* v. *Selleck*, 48 Ala. 226; in which a conveyance of real estate to a wife, with the concurrence of her husband, in satisfaction of a debt due the wife, and a mortgage executed by husband and wife to secure an excess of the value of the estate above the debt, was sustained.

The purpose of the bill is not to fix a personal liability on the wife. No judgment or decree binding her personally can be rendered on it. Nor is it proposed to subject her statutory estate to the payment of the notes executed by husband and wife for the purchase money of the lands. The equity of the bill is satisfied when it is declared the lands are subject to the payment of the purchase money, the condition on which the conveyance to the wife was made, and that the appellant by his purchase acquired title. The authorities to which we have referred support the validity of the conveyance and mortgage; and appellant's purchase at the mortgage sale not being impeached for inadequacy or unfairness, and no offer to redeem being made, he was entitled to that relief.

The next question arises on the cross-bill of Mrs. Cowles, by which she seeks to repudiate the purchase as void, and

[Marks v. Cowles.]

claims a trust on the lands for the money she had paid. As we have seen, the right of disaffirming the purchase and conveyance, during coverture, did not pertain to her at common law. We shall not now inquire whether the statutes have wrought a change in the common law in this respect. We prefer to rest our opinion on the proposition, that the husband, as trustee of the wife, has, under the statute, power to invest, with the concurrence of the wife, moneys, the *corpus* of her statutory estate, in the purchase of lands. This question has not heretofore been presented to this court, except on the former decision of this cause.

The proper construction of the statute declaring the property of the wife her separate estate, has perplexed the courts and the bar ; and the uncertainty attending it is the source of distressing insecurity in the community at large. What is the true legal *status* of the wife—what are her powers of contracting—what are the powers and duties of the husband, and his real relation to the wife's estate—it is matter of profound regret, are not more clearly defined in the statute. When such a radical change was wrought in the law of the most important of the domestic relations— when the community were compelled to depart from their habits and customs, and to observe a new rule of action, in direct repugnance to well known laws—the new rule should have been clearly expressed and adapted to meet the exigencies springing out of the necessary and ordinary transactions of life. The vexatious litigation which has followed its enactment is the legitimate consequence of a statute so nearly touching the domestic affairs of the community, in which so much is left to implication or construction.

The statute first declares all property of the wife, held by her previous to the marriage, or which she may become entitled to in any manner, is the separate estate of the wife, which is not subject to the payment of the debts of the husband. Then, it is declared, property thus belonging to the wife vests in the husband as her trustee, who has the right to manage and control the same, and is not required to account with the wife, her heirs, or legal representatives, for the rents, income and profits thereof; but such rents, income and profits are not subject to the payment of the debts of the husband. The property of the wife, or any part thereof, may be sold by the husband and wife, and conveyed by them jointly, by instrument of writing, attested by two witnesses. The proceeds of such sale are the separate estate of the wife, and may be reinvested in other property, which is also the separate estate of the wife, or such proceeds may

[Marks v. Cowles.]

be used by the husband in such manner as is most beneficial for the wife. The husband has power to receive property coming to his wife, or to which she is entitled; and his receipt therefor is a full discharge in law and equity. For necessaries for the family, the separate estate of the wife is liable in an action at law against the husband alone, or against the husband and wife jointly. R. C. § § 2371-77. In suits at law, relating to the separate estate, the wife must sue or be sued alone. R. C. § 2525. It is observable that while to husband and wife is given the power of alienating, it is manifest the alienation contemplated is a sale only. It is the proceeds of sale, which remain, as the property sold was, her separate estate, which may be reinvested in other property, becoming her separate estate, or which the husband may use as may be most beneficial for her. The statute is silent as to money, the *corpus* of the wife's separate estate, not the subject of alienation, but the subject of conversion into other property, or of investment, unless it is derived from a sale of other property. It is not contemplated such moneys shall remain in the keeping of the husband, a barren and unproductive fund. It is expected these and all the wife's separate property will yield an income, if it is real estate, in the way of rents, if personal property, in profits. These the husband takes, without liability to account, and freed from liability to his debts. The power of the husband is to receive the property of the wife—a power he is not required to exercise concurrently with the wife. His receipt therefor is a full discharge in law and in equity to the person to whom it is given. His duty is to "manage and control the property." The management and control the husband is to exercise must be conservative of the estate—not of the particular form in which he may receive it, but preservative of it from loss or dimunition, and so that during the trusteeship, and after its termination, it will produce income and profit, and promote the convenience and comfort of the wife and her family. The lands may be leased or rented, or cultivated, at the discretion of the husband. Money may be loaned on the usual security, or invested in government or other securities in which men of ordinary prudence would invest their own. The *corpus* of the estate may consist wholly of money, and the wife may be without a homestead. It would be the right and duty of the husband to invest so much as was necessary in the purchase of a homestead, suitable to the degree of the wife's fortunes and her condition in life. Keeping in view the preservation of the estate, and the benefits which may result to the wife, the

Vol. LIII.

[Marks v. Cowles.]

husband may make such investments of the wife's money as he may deem best. If there is a want of prudence in making such investments, it would be cause of his removal from the trusteeship, as it would be for the removal of any other trustee who abused or misused a discretion with which he is clothed. Any wilful dereliction of duty in making such investments, in which strangers participate with him, renders them answerable for the loss their collusion may produce.

It is said, in the former opinion in this case, that if an investment of the wife's money, not derived from a sale of her property, is sought, the husband should apply to a court of equity for authority and direction. The only parties to such a suit would be husband and wife, and we cannot suppose it was contemplated that they should be made to bear, even seemingly, the relation of adverse suitors; or that there should be judicial intervention and supervision whenever the husband had moneys of the wife which ought to be invested; or that the estate should be subjected to such expense. The tendency of such a construction of the husband's power and duty would be to introduce frequent causes and occasions to disturb the harmony of the marital relation, which it is the paramount policy of the law to preserve. Though a trustee, he is husband, and bound by all the ties of the relation to protect and preserve the interests of the wife. He is entitled in his own right to the rents and profits. These it is supposed are sufficient safeguards for fidelity in the exercise of his powers. If they prove insufficient, the statute provides for his removal from the trust. It is not a sufficient argument to say this subjects the wife to imposition from the husband. The relation itself, and all its influences, inspire, or should inspire, in the wife unlimited confidence in the husband. This confidence is and should be the distinguishing characteristic of the relation. Whenever confidence is reposed, there is danger of imposition, and against its abuse it is almost impossible to guard. If we should indulge in ungenerous fears or suspicions of its abuse, or narrow and circumscribe the rights, powers and duties of the husband as the protector of the wife, to guard her from his errors of judgment, we would "loosen the bond whose principal virtue consists in its closeness."

If it is admitted a court of equity could have directed the investment of the wife's money, the investment made in this case would be sustained. It is a general rule that a trustee may safely do that without a decree of the court

[Atwood v. The State.]

which the court, on a case made, would order or decree him to do.   Perry on Trusts, § 476.   Under the facts, a court of equity would have directed a trustee to purchase the lands. They were adjacent to a large plantation, the estate of the wife, which was without timber to supply firewood or to keep in repair the enclosures and buildings.   It was without convenient access to the railroad, on which the crops raised were transported to market.   The lands purchased were timbered more than sufficiently to supply the plantation, and afforded a convenient outlet to the railroad.   They added to the value of the plantation more than the price agreed to be paid for them, and that price was fair and reasonable.   These were the facts when the purchase was made, and it is these, and not facts subsequently occurring, which human foresight could not anticipate or guard against, that a court of equity would regard, whether it was passing on the propriety of investment before authorizing it, or subsequently in sanctioning it.   The court would have authorized the investment; the profitable use and enjoyment of the estate required it; and that is well done which the court would have ordered done.

We are compelled to overrule the former decision in this cause.   The decree of the chancellor must be reversed, and the cause remanded.   If a sale of the lands had not been made under the decree of the chancellor, we would here render the proper decree ; but that may render some further proceedings necessary in the court of chancery before a final decree is rendered.