J. & N. B. RANDALL v. TEXAS CENTRAL R'Y CO.

(Case No. 5207.)

1. HOMESTEAD — RIGHT OF HUSBAND TO GRANT RIGHT OF WAY TO A RAILWAY COMPANY.— The husband may, without being joined by his wife, grant a right of way to a railroad company across a tract of land belonging to himself and wife and occupied by them as a homestead, when the use of the right of way by the railway does not materially affect the right of the wife to the enjoyment of the use and occupancy of the land for homestead purposes.

ERROR from Bosque. Tried below before the Hon. Jo Abbott.

Trespass to try title by plaintiffs in error for the recovery of about eighty acres of land. The petition alleged that the land was community property and the homestead of the plaintiffs.

The amended petition admitted the execution, by plaintiff N. B. Randall, of a deed conveying to defendant a right of way two hundred feet wide through the land, so far as he had right and power to convey, without the signature and consent and against the wishes of the wife, Jeannette Randall.

The defendant disclaimed as to all the land sued for, except the right of way two hundred feet wide through the tract, and as to that pleaded not guilty and general denial.

Also in abatement the joinder of Jeannette Randall and general demurrer, and disclaimed as to all right in the land conveyed by N. B. Randall's deed, except the right of way and privileges annexed under the general laws, and prayed that the damage done the land by appropriation of the right of way might be assessed by commission or otherwise, if it should be found that the railroad had not obtained a title to it.

The court sustained defendant's demurrer to the petition.

*Thos. Harrison*, for plaintiffs in error, that a right of way is an estate in land, and, if it is across a homestead, cannot be conveyed by the husband alone, cited: Tex. & P. R'y Co. *v.* Durrett, 57 Tex., 48, and authorities cited; The C. P. R'y Co. *v.* Benity, 15 Am. R'y Cases, 363; Rogers *v.* Renshaw, 37 Tex., 625; Welsh *v.* Rice, 31 Tex., 688; Young *v.* Van Benthuysen, 30 Tex., 762; Eckhardt *v.* Schlecht, 29 Tex., 129; Cross *v.* Everts, 28 Tex., 523.

Even if it is the husband's separate property, the wife has such an interest in the homestead that it cannot be conveyed without her consent, citing: Kirkland *v.* Little, 41 Tex., 456; Wilson *v.* Cochrane, 31 Tex., 677; Garrison *v.* Grant, 57 Tex., 603.

*Alexander & Winter*, for defendant in error, cited: Chicago & S. W. R'y Co. *v.* Swinney *et ux.*, 38 Iowa, 184; R. S., art. 4206; Texas Pacific R'y Co. *v.* Durrett, 57 Tex., 50.

WATTS, J. COM. APP.— Only one question is presented by this record for consideration and disposition, and that is as to the power of the husband, without the consent and concurrence of the wife, to grant to a railroad company a right of way over or across a community property homestead.

When the fee to land is vested in the community property, ordinarily, for all practical purposes, it may be considered as vested in the husband, so long as the marriage relation exists. For, during the coverture, the husband generally has the unrestricted right to alienate or otherwise dispose of such property, in whatever manner or for whatever purpose may to him seem proper. He is, during the coverture, practically the owner of the land.

This ownership upon the part of the husband is neither destroyed nor impaired by reason of the fact that it may have become the homestead. Should it, by abandonment or otherwise, lose its homestead characteristics, it immediately becomes, as other community property, subject to the absolute dominion of the husband, and over which he has the power of disposition without the consent or concurrence of the wife.

It is equally true of his separate property which has been clothed with the homestead quality; whenever it loses that characteristic his absolute right to convey or otherwise dispose of it cannot be questioned.

However, so long as the property is the homestead, whether it be the one or the. other, the constitution and statute suspends the power of the husband to sell and convey it, without the concurrence and consent of the wife, given in the mode prescribed by law.

By this suspension of the husband's power of alienation, it was intended to protect the wife and family in the quiet and uninterrupted possession and enjoyment of their home.

Nevertheless, the husband's right to manage and control the homestead, in any manner not inconsistent with the object and purpose of the protection, will not be disputed. He may rent or lease a part or all of the homestead, without the consent of the wife, for a reasonable time. He also has the right to subject the property to such use as to him may seem best, provided the use does not destroy or materially affect it as a homestead.

In providing for the exemption, it was never intended that the husband should be shorn of those recognized and natural rights which appertain to him as the head of the family, and the exercise of which is reasonably necessary in his providing for its maintenance. Upon him rests the obligation to support the family, and to him belongs the correlative right of controlling the property belonging to the marital partnership, in such manner as to him may seem best, without the necessity of securing the concurrence and consent of the wife, so that this right is not so exercised as to materially affect or destroy the homestead rights of the wife. In this respect the constitution and statutes are limitations upon the power of the husband to sell and convey property to which the homestead character has attached.

If it was not for the inhibition, certainly the husband would have the power to sell and convey the community property without the consent of the wife, notwithstanding they might be occupying it as a home. It is, therefore, only to the extent intended by the limitation that the husband is deprived of the power of control and disposition of community property possessing the homestead character. And the intention was only to hedge his power in this respect, where its exercise would materially affect the right of the wife to the enjoyment of the use and occupancy of the homestead.

There can be no dispute as to the fact that the property was subject to the exercise of the right of eminent domain, whether it did or not possess the homestead quality.

Now suppose that the right of way had been regularly condemned; then as it neither destroyed nor materially affected the property as a homestead, the damages assessed would have been paid to the husband, who could have used it at his pleasure, and that without any supervisory control by the courts.

This being true, the right of the husband to contract with the company as to such reasonable right of way, without the consent of the wife, would seem to follow as a natural consequence.

If the husband should attempt to so exercise this right as to destroy the homestead, or to materially affect it as such, upon proper application doubtless the courts would interpose through their equitable power to prevent the imposition.

It is not true, as contended, that the wife's separate estate and a community property homestead occupy the same position in this respect. As to the separate property of the wife the husband has no right whatever to sell and convey it; the property belongs to the wife, not to the husband; and the extent of his power is conferred by the statute — to manage and control; while on the other hand he has the unlimited power to sell and convey the community property, except as qualified by the homestead provisions of the constitution and statute.

In the case of The T. & P. R'y Co. v. Durrett, 57 Tex., 48, the want of authority upon the part of the husband to grant a right of way over the separate property of the wife, without her concurrence and consent as prescribed by statute, is clearly shown. But the principles announced in that case have no controlling influence upon the question now under consideration.

In East Tennessee & Virginia R. Co. v. Love, 3 Head, 65, it is said: "The right to take land under the power of eminent domain is not restricted by any disabilities of the owner. That would defeat the object of the power, which is the public necessity to take it for the general good. The power of the state to appropriate the property is unquestioned, but the right of the owner to be paid for it is secured by the constitution. The power of the state is subject to no restrictions but that of making compensation. This inherent authority of the government to take private property for public use is exercised without any reference to the private ownership. The existence of infancy, coverture or other disability presents no obstacle. The correlative constitutional right, to demand and receive the value of the property, can only be asserted by the true owner."

In a case like this, where the taking would neither destroy nor materially affect the property as a homestead, the husband, as the head of the family, must be considered the true owner of the land taken, and as such entitled to receive the value. Then there could be no sound objection to permitting him, under like circumstances, to contract with the company in regard to the right of way, subject to the limitation that he cannot thereby destroy the homestead or materially affect it as such.

In the case of The Chicago, etc., R. R. Co. v. Swinney, 38 Iowa,

184, it was held that the husband could, without the concurrence and signature of the wife to the deed, convey a right of way to a railroad company over the homestead, provided the effect of the conveyance would not be such as to defeat the substantial enjoyment of the homestead as such.

Upon the agreed case as presented, we are of the opinion that there is no error in the judgment of the court below, and that therefore it ought to be affirmed.

AFFIRMED.

[Opinion adopted February 6, 1885.]