# Wilder *v.* Wilder.

*Bill in Equity to enforce Vendor's Lien on Land.*

1. *Waiver of vendor's lien; equitable estoppel against married woman.* A married woman, joining with her husband in a sale and conveyance of land belonging to her statutory estate prior to the laws now of force, and taking a second mortgage to secure the deferred payment of the purchase-money, is estopped from asserting a vendor's lien on the land, as against the first mortgagee, who, with her knowledge, acquiescence and active interference, advanced the money with which the cash payment was made, taking his mortgage as security.

APPEAL from the Chancery Court of Lowndes.
Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 2d March, 1888, by Mrs. Savannah Wilder, a married woman, against Sydney B. Wilder and the "American Freehold Mortgage Company of London," a foreign corporation; and sought to establish and enforce a vendor's lien on a tract of land, which the complainant and her husband had sold and conveyed to said Sydney T. Wilder, and, more particularly, to have her lien declared superior and paramount to that of a mortgage which said Sydney T. Wilder had executed to said foreign corporation, to secure the payment of the money borrowed from it, with which he made the cash payment to complainant. The chancellor rendered a decree for the complainant, but declared her lien inferior and subordinate to the lien of the corporation's mortgage; and the latter part of this decree is here assigned as error by the complainant.

[Wilder v. Wilder.]

CLEMENTS & BREWER, for appellants.

WEBB & TILLMAN, *contra.*

SOMERVILLE, J.—The controlling question in this case involves the doctrine of equitable estoppel, or estoppel *en pais*, in its application to a married woman, where she appears as a complainant in a court of equity, seeking affirmatively to enforce a right inconsistent with her previous conduct, upon which one of the defendants in the suit has relied and acted. The subject is one in regard to which there is no little conflict of authority, and the magnitude of its importance grows with the changed policy of modern legislation, removing, to a great extent, the iron-clad disabilities of married women imposed by the rules of the common law.

The specific question here involved is, whether a married woman is estopped to enforce a vendor's lien on land, sold and conveyed by joint deed of herself and husband in due form, prior to the Code 1886, when she and her husband were active in making the sale, and by their declarations and conduct induced a third person to advance to her vendee a part of the purchase-money, with the understanding that her lien should be waived in favor of such person. In other words, if she agrees to have secured the unpaid installment of her purchase-money on the land by a *second* mortgage, subordinate to a first mortgage of a third person, who, on the faith of such superior security, advances the money to her vendee, to enable him to pay the first installment *to her*, can she afterwards repudiate this waiver of her vendor's lien, and enforce it as a prior lien over this other incumbrance, the superiority of which she had admitted, and on the faith of which admission she procured the money? We may add, that the transaction is conceded to be governed by the law as it existed under the Code of 1876.

This court has uniformly held, that the doctrine of estoppel *en pais*, by conduct or admissions, can not, when unaccompanied by fraud, be invoked against married women, so as to preclude them from denying the validity of conveyances of their statutory separate estate, which do not conform to the requirements of the statute governing the mode of its alienation. This prescribed mode, under the Code of 1876, was by joint deed of husband and wife, attested by two witnesses, or acknowledged in due form.—Code, 1876,

[Wilder v. Wilder.]

§§ 2707–2708. The reason upon which these decisions rest is, that the statute prescribes and restricts the mode of alienation by married women, of their separate estates; and to allow title to be conferred by equitable estoppel, would introduce a new mode of alienation different from that thus prescribed, and would result in sanctioning indirectly the conveyance by *femmes covert* of their property, when they were prohibited by statute from doing directly the same act in the mode attempted.—*Canty v. Sanderford*, 37 Ala. 91; *Alexander v. Saulsbury*, *Ib*. 376; *Drake v. Glover*, 30 Ala. 390; *Hardin v. Darwin*, 77 Ala. 472; *Scott v. Battle*, 39 Amer. Rep. 694. So it has been held, in a former decision of this court, that, where a husband and wife conveyed with covenant of warranty lands to which they had no title, the wife would not be estopped from setting up against the grantee a title to such land afterwards acquired by her. *Gonzales v. Hukill*, 49 Ala. 260; 20 Amer. Rep. 282. The act of warranty, being purely contractual, could not operate by estoppel, because a married woman then labored under a legal disability to make such a covenant. But there are decisions of other courts opposed to this view.—*Nash v. Spofford*, 43 Amer. Dec. 425.

In the case of *Drake v. Glover*, *supra*, where the property of the wife was held not to be governed as to its mode of transfer by the statute, because it was not her statutory separate estate, and might, therefore, be conveyed otherwise than by the joint deed of the husband and wife, it was held that the *fraudulent* silence of the wife, when her personal property was sold in her presence by her husband, would estop her from afterwards repudiating the sale; but her mere silence, unaccompanied by fraud, would have no such effect.

In *Strong v. Waddell*, 56 Ala. 471, a married woman, who had purchased land, and executed, jointly with her husband, a mortgage as security for the payment of the purchase-money, was held to be estopped from denying the title of her vendor, or to interpose her coverture in bar of the foreclosure of the mortgage. The practical effect of such a transaction is, that the vendee takes the property burdened with the mortgage, being an estate on condition, to become absolute only on the payment of the purchase-money,—*Marks v. Cowles*, 53 Ala. 499. The estoppel is against claiming the estate and repudiating the incumbrance by which it is burdened.

In *McCaa v. Woolf*, 42 Ala. 389, the doctrine of equitable

[Wilder v. Wilder.]

estoppel was applied to a married woman, so as to preclude her from asserting title to certain personal property, which the husband, under the rules of the common law, had reduced to possession, and suffered to be sold, and which she, after his death, claimed by right of survivorship.

Mr. Bigelow, in his work on Estoppel, p. 490, asserts that the weight of reason and authority confines the doctrine, when applied to married women, to cases of "pure tort," and excludes from its operation all cases where the "action sounds in *contract*."

Mr. Pomeroy, after calling attention to the conflict of authority on this subject, observes: "The tendency of modern authority, however, is strongly towards the enforcement of the estoppel against married women as against persons *sui juris*, with little or no limitation on account of their disability. This is plainly so in States where the legislation has freed their property from all interest or control of their husbands, and has clothed them with partial or complete capacity to deal with it as though they were single. Even independently of this legislation, there is a decided preponderance of authority sustaining the estoppel against her, either when she is attempting to enforce an alleged right, or to maintain a defense." And he adds: "There are, however, decisions which hold in effect, that since a married woman can not be directly bound by her contracts or conveyances, even when accompanied with fraud; so she can not be directly bound through means of an estoppel, and the operation of the estoppel against her must be confined to cases where she is attempting affirmatively to enforce a right inconsistent with her previous conduct upon which the other party has relied. These decisions seem to be in opposition to the general current of authority."—2 Pomeroy's Eq. Jur. § 814, and cases cited in note.

There are many cases, both English and American, which support this view of the law.—*Boyd v. Turpin*, 55 Amer. Rep. 597; *Hodges v. Powell*, 60 *Ib.* 401; *Shivers v. Simmons*, 28 *Ib.* 372, and *note*, pp. 374–377; *Bradley v. Snyder*, 58 Amer. Dec. 564; *note*, 569; *Lowell v. Daniels*, 61 *Ib.* 448; *note*, 543; *Nash v. Spofford*, 43 Amer. Dec. 425; *note*, 426; *Besson v. Eveland*, 26 N. J. Eq. 471; *Connolly v. Brantsler*, 3 Bush (Ky.), 702; 1 Story's Eq. Jur. § 385; Kelly Contr. Mar. Women, ch. 6, § 5; 2 Pom. Eq. Jur. § 814, and cases cited.

A vendor's lien for unpaid purchase-money is not such an

[Wilder v. Wilder.]

interest in land as to require an instrument in writing, in order to waive or alienate it. It is a mere incident of the contract of sale, implied by law, and it may be waived or abandoned by any suitable act, or oral declaration, showing an intention to do so on the part of one competent to contract.—*Woodall v. Kelly*, 85 Ala. 368; 7 Amer. St. Rep. 57; *Ramage v. Towles*, 85 Ala. 588.

A married woman, as we have said, was, at the time of this transaction, invested with the power under the laws of Alabama to sell and convey her separate estate by the joint deed of herself and husband, duly attested or acknowledged. Code, 1876, §§ 2707-2708. It is justly argued, that this power to sell embraces the power to sell for cash, or on credit, or partly for both cash and credit. It includes the authority to retain the legal title as security for the payment of the purchase-money, or to convey the legal title and take in return a mortgage from the vendee to secure it, or to take personal security on the notes for the purchase-money. In other words, she may sell and fix the terms of sale, according to any of the modes sanctioned by common usage. It is our judgment that she may, as an incident of this right to sell, waive her right to enforce her vendor's lien, if not by mere oral agreement, at least by conduct which would preclude her from subsequently asserting such lien upon the principle of equitable estoppel. If she could be estopped in no instance, the morality of the law would be placed upon a very low plane, and the disability of coverture, instead of being, as it ought to be, a shield for her protection against legal wrong, would become a sword of injustice for the license of fraud. While, therefore, a married woman may not always be estopped to deny her capacity to contract, especially so as to convey her property in a mode prohibited by law, she may be estopped by any positive act of fraud, as a person *sui juris* would be. Whether in any case, not involving a transfer of title to property in a mode prohibited by law, she may be estopped by acts *en pais*, unaccompanied by fraud or other tort, we do not now decide.

The application of these principles to the facts of this case does not seem to us to be attended with any great difficulty. The complainant, Mrs. Savannah Wilder, a resident of Texas and a married woman, agreed to sell to the defendant, Sydney B. Wilder, her brother-in-law, certain lands in Lowndes county, Alabama. The correspondence was conducted, on the one hand, through the complainant's husband, at Bart-

[Wilder v. Wilder.]

lett, Texas; but she asserts in her testimony that she in fact supervised this correspondence, and controlled the terms of the trade. It was conducted on the other through the defendant, Sydney Wilder, and H. C. Semple, Esq., a practicing attorney at Montgomery, Alabama, who acted for *the complainant*. It was first agreed that the vendee should pay as much as $4,000 cash, and $500 on credit for the land. The deed was drawn by Semple, sent to Texas, and, being executed in due form, sent back to him for delivery on compliance with the terms of sale. The consideration was recited in the deed, but was not stated to have been paid.

The vendee, Sydney Wilder, was to obtain the money which he expected to pay, from the American Freehold Land Mortgage Company of London, which had an agent in Alabama so as to comply with the law as to foreign corporations doing business in this State, but did all business in fact through an agency in New York. To secure the loan from this company, he was to give a first mortgage on the land. The company declined to advance him more than $3,500. Of this sum he needed all but $2,000 to carry on his farming business, and pay other expenses. He thereupon proposed, through Mr. Semple, to modify the contract so as to pay Mrs. Wilder only $2,000 cash, and to secure the balance by a *second* mortgage. This was communicated to the complainant, by letter to her husband, and they authorized the delivery of the deed on these terms, telegraphing Mr. Semple to that effect. The deed was delivered accordingly, a second mortgage being taken to secure the deferred payments, which contained the recital that it was to be subordinate to the mortgage given to the London company. This mortgage was received by Semple as the agent of the complainant. The cash payment was transmitted to her, and she received it with a knowledge of the facts. We need only say that the testimony in the case satisfies us that, when the complainant received this money, she either knew, or was charged with notice of the fact, that her vendor's lien was abandoned by the taking of this second mortgage subordinate to that of the American Freehold Land Mortgage Company of London, which advanced the money on the faith of the assurance that its mortgage was to be superior to hers. The deed executed by the complainant and her husband to Sydney Wilder, and the mortgage executed by the latter to his vendors—reciting that it is subordinate to the first mortgage of the London company—being contemporaneously ex-

ecuted, would in equity constitute but one transaction. "The two are read together, as if they were but parts of a common instrument.—*Marks v. Cowles*, 53 Ala. 502-503, *supra*.

As matter of contract, therefore, the vendor's lien would seem to be waived. But, apart from this, these papers contain within themselves a positive representation that the lien is waived, by the declaration that a *second* or subordinate mortgage was taken to secure the unpaid purchase-money. The complainant, as we have said, had notice of this fact, and authorized the transaction, in order to induce the London corporation to advance the money which was to come to her through her vendee, Sydney Wilder. The company did act on it, and was drawn in to lend their money on the faith of its truth. To allow the complainant now to repudiate the transaction, by gainsaying the truth of the fact that such lien had been waived, as the papers in question import, would be a fraud on this corporation, which equity and good conscience ought not to permit. In our opinion, a court of equity ought to prevent the complainant from affirmatively asserting the alleged priority of this lien, as she now attempts to do, in contravention of her conduct, upon which the defendant company has relied and been induced to act. 2 Pom. Eq. Jur. §§ 814-815; *Bradstreet v. Clark*, 12 Wend. 602.

The decree of the chancellor subordinates her lien for the purchase-money to the first mortgage of the defendant corporation. There is no error in this decree of which she can take advantage on this appeal, and the decree is accordingly affirmed.