108 581
d171 ²196

DODD, *Appellant*, v. THE ST. LOUIS & HANNIBAL RAILWAY COMPANY.

DIVISION TWO.

1. **Railroad : RIGHT OF WAY : EJECTMENT.** Ejectment will lie against a railway company for land over which it has built its road without having acquired title by conveyance or condemnation, or a license, express or implied.

2. ——— : ——— : ——— : **ESTOPPEL.** Where, however, the landowner with full knowledge of the facts, and without objection, permits the company to expend large sums of money in the construction of its road through his land, he cannot maintain ejectment.

3. ——— : ——— : ——— : ———. Nor is it material in the application of the foregoing rule, that such owner's interest was subject to a life-estate in another.

*Appeal from Ralls Circuit Court.*—HON. T. H. BACON, Judge.

AFFIRMED

*Harrison & Mahan* for appellant.

( 1 ) The court committed manifest error in giving instruction, numbered 1, of its own motion in behalf of respondent. Appellant Dodd could neither object nor acquiesce in the entry on the land, or the building of the railroad, nor could he interfere with respondent's possession until the expiration of the life-estate of his mother, Maria Dodd. *Bradley v. Railroad*, 91 Mo. 500 ; *Raume v. Chambers*, 22 Mo. 36 ; *Miller v. Bledsoe*, 61 Mo. 96 ; *Roberts v. Nelson*, 87 Mo. 229. No rights or cause of action accrued to plaintiff until his mother's death. *Dyer v. Brannock*, 66 Mo. 391 ; *Dyer v. Wittler*, 89 Mo. 81. ( 2 ) There was no evidence upon which to base such an instruction. Mere inaction on the part of the plaintiff cannot be construed into an acquiescence on his part. It is not shown that Maria Dodd had any knowledge of the building of the road, except the bare presumption arising from the fact that she resided on adjacent land, and there is no evidence of any knowledge by any of the other heirs of Stephen Dodd. *Walker v. Railroad*, 57 Mo. 275; *Railroad v. Smith*, 78 Ill. 96 ; *Armstrong v. City*, 69 Mo. 309 ; *Bradley v. Railroad, supra*. This instruction is inconsistent, and conflicts with instruction, numbered 1, given by the court of its own motion, for appellant, and is for that reason fatally defective. *Gay v. Gilliland*, 92 Mo. 250 ; *Frederick v. Allgaier*, 88 Mo. 598 ; *Thomas v. Babb*, 45 Mo. 384 ; *Stone v. Hunt*, 94 Mo. 475 ; *Martinowsky v. Hannibal*, 35 Mo. App. 70 ; *State v. Herrell*, 97 Mo. 110. ( 3 ) The court committed error in giving instructions, numbered 2 and 3, on behalf of respondent ; they submit the construction of the deed to the jury. It was the duty of the court to construe the written contract. *Crawley v. Mullins*, 48 Mo. 517; *Gas Co. v. Ins. Co.*, 33 Mo. App. 348 ; *Miller v. Dunlap*, 22 Mo. App. 97. The fact that the railroad property was sold under foreclosure of mortgage, and the further

Dodd v. The St. Louis & H. Ry. Co.

fact of its being subsequently mortgaged by respondent, constitute no estoppel against this plaintiff.

*James H. Orr* for respondent.

( 1 ) The evidence shows that the strip of land sued for had been in the possession of the defendant and those under whom it claims since 1870, more than ten years before the commencement of this suit, and plaintiff's claim of title, if any, was barred by the statute of limitations. *Key v. Jennings*, 66 Mo. 353 ; *Bradley v. Railroad*, 91 Mo. 493. And in this case there is no evidence as to any of the heirs of Stephen Dodd being married women at the time of the building of the railroad in 1870, nor at the time the lands of Stephen Dodd were partitioned in 1887, by which the land in question was set apart to the plaintiff. ( 2 ) The plaintiff was forty-one years old when the road was built in 1870. All the other heirs were over twenty-one years of age. He lived upon the land from 1870 and prior thereto until 1888 before commencing this suit. He knew the road was being operated at that time. He may have forgotten about the deed he made ; permitted the company to build cattle-guards, fences, and put other valuable improvements thereon. Under such circumstances, ejectment will not lie. *Kanaga v. Railroad*, 76 Mo. 207. ( 3 ) Because of life-estate of Maria Dodd in the land in question, the plaintiff was not estopped from preventing waste against the land, or any unlawful entry or appropriation of it by a stranger. And the owners of the land, although having different interests, had the right to prevent such waste, unlawful entry or appropriation, or they could procure an appraisement or condemnation by *mandamus*. They were not without remedy, as claimed by appellant.

THOMAS, J.—This is an action of ejectment for the recovery of a strip of land, one hundred feet wide,

through the west half of the southeast quarter and east part of the northwest quarter of section 19, township 46, range 4, west, occupied by defendant for its railroad. Stephen Dodd owned this land at the time of his death in 1836, and it was in 1840 set off to his widow for her dower. The widow occupied it till her death, which occurred in 1886. Plaintiff was one of the children of Stephen Dodd, and after the death of said widow this land was set off to him in a partition proceeding between him and the other heirs of his father.

The defendant, in its answer, denied plaintiff's title and set up matter constituting an estoppel *in pais*. To sustain these two defenses defendant read in evidence a deed executed by plaintiff, dated May 23, 1870, by which he sold, conveyed and relinquished to the St. Louis & Keokuk Railroad Company the right of way, one hundred feet wide, through the west half of the southeast quarter of section 19, and also through two tracts of land in section 30 of said section, township and range in which deed were these stipulations: *First*. The grantor reserved the timber and the right to cultivate the land, not in actual use by said railway company, until it was fenced. *Second*. The company was to make necessary road crossings, fence the road as soon as the trains should be run, and in the meantime indemnify the grantors for all damage committed or suffered by it or its contractors or employes in the construction of the road, or for trespass or waste committed by laborers on the road by erection of shanties, stables or other buildings.

The defendant also introduced evidence tending to prove that the railroad was built in 1870 or 1871; that at that time plaintiff was about forty-one years of age and lived on said land, and continued to live, and still lives on it; that, from 1873, trains have run regularly over the road; that the construction of the road through said land cost about $10,000. Defendant company, for a valuable consideration, acquired the title to the

railroad by intermediate conveyances from the St. Louis & Keokuk Railroad Company.

The verdict was for the defendant, and it is now assigned for error that the court misdirected the jury by telling them that, if plaintiff and those from whom he derived title acquiesced in the building of the railroad on said land, he could not recover.

It is well settled in Missouri that ejectment will lie where a railway company builds its road over land to which it has acquired no requisite title by condemnation or conveyance or license, express or implied. *Walker v. Railroad*, 57 Mo. 275 ; *Bradley v. Railroad*, 91 Mo. 500.

And it is equally well settled that a party, who, with full knowledge, stands by and permits a company to expend large sums of money in the construction of a railroad through his land without objection, forfeits his right of ejectment. *Kanaga v. Railroad*, 76 Mo. 207 ; *Provolt v. Railroad*, 57 Mo. 257 ; *Masterson v. Railroad*, 72 Mo. 343 ; 5 Law. Rep. Ann. 183, and notes. This right is forfeited by virtue of the application of the doctrine of estoppel as well as the intervention of public interests. Property in a railway is peculiar. A railway may be likened to a chain, which is worthless with one link out. The ejectment of the company from a mile or half a mile of its track almost wholly destroys the value of the entire line. The land-owner knows this and when he stands by and sees large sums of money expended on his land, and probably millions expended in the construction of the whole road, and interposes no objection, every consideration of justice and fair dealing requires that he should not be permitted to destroy such vast interests by wresting possession of a part of the road from the company, and thus severing its connections.

And, again, ordinarily the party who obtains possession of land from one who has made valuable improvements thereon can utilize such improvements, *i. e.*, the

improvements are as valuable to him as the party that made them, and he will be compelled to pay for them, if not made in good faith. But not so with a railroad. The improvement is not only of no value to the land-owner, but is, in fact, a nuisance till removed, Ties and rails and culverts and embankments and cuts are an actual injury for all purposes except a railroad, and, hence, it would be unjust to make the land-owner pay for that which has not enhanced the value of his property, but, on the contrary, has depreciated it for the purposes to which he wishes to put it. The ejectment, then, of a railway company from a portion of its road operates as a destruction, not only of the portion taken, but of the whole road, in a great measure. The doctrine of estoppel, therefore, applies with great force to the taking of property for a railway. In such case we can pertinently say that he, who will not speak when he should, ought not to be permitted to speak when he would.

But, in cases of railways, another principle is applicable. Railways are, by our constitution, declared to be public highways, and railroad companies common carriers. They are charged with a service that is public. A public character is strongly impressed upon them ; so strongly that courts exercise control over them not assumed over ordinary citizens, and congress and the legislatures of the various states regulate and control them, not only in their freight and passenger rates, but also in their operation and management. The commerce of the country is dependent on them. Factories and elevators are erected along their lines. Vast business interests become involved. They carry the mails of the nation. All these, and more, demand that a citizen, who, with full knowledge, and without objection, stands by until the completion of the road, shall not be allowed to sever the line and take property that does not enrich him, but makes the company poor indeed, and paralyzes the business and prosperity of the people.

Public policy enters as a factor and controls the court. The land-owner is not remediless, however. By permitting a railway corporation to occupy his land, he does not thereby forfeit his right to compensation, and this he can, and ought to, have, if seasonably applied for. We do not wish to be understood as holding that the land-owner should in no case be permitted to maintain ejectment against a railway company after the completion of the road. In many instances ejectment would be an appropriate and just remedy.

But we do not think this is one of them. Plaintiff lived on the land at the time the road was built. That he gave his consent to the construction of the road through all his land, as well that not included in his deed as that which was, there can be no question. The road ran through land that was then in cultivation. Plaintiff, no doubt, was anxious to have the road built and encouraged its building. This appears from the fact that he gave the right of way through a large portion of his land in consideration of $1. Indeed, the inference is almost irresistible that he and the officers of the company supposed the deed he executed covered all the land he owned, for it is not probable that they would enter into a contract of so many details for a portion of the land only. A right of way for a portion would be utterly valueless without the remainder. At all events plaintiff must have consented to the construction of the road through the land not covered by the deed, and, in that event, he cannot revoke the license thus granted, sixteen years having elapsed after the completion of the road. It would be inequitable and unjust to allow him to do this.

We think the fact that plaintiff's interest in the land was subject to the life-estate of the widow does not materially alter the case. He had a legal right to object to the location of the road over the land in which he had a vested remainder, and, besides that, he had an

adequate remedy for any injury to the freehold occurring during the term of the life-tenant.  *Elliot v. Smith*, 2 N. H. 430 ; *Chase v. Hazleton*, 7 N. H. 171 ; *Ripka v. Sergeant*, 7 W. & S. 9 ; *Fay v. Brewer*, 3 Pick. 203. Judgment affirmed.   All concur.