## LAVENE ET UX. *v.* JARNECKE.

[No. 3,980. Filed January 15, 1902.]

MORTGAGES.—*Principal and Surety.—Husband and Wife.—Tenants by Entireties.—Estoppel.*—Under §348, Burns 1901, providing that no objection taken by demurrer and overruled shall be sufficient to reverse the judgment if it appears from the whole record that the merits of the cause have been fairly determined, a judgment foreclosing a mortgage executed by a husband and wife on real estate held by them as tenants by entireties, in which the wife set up the plea of suretyship, will not be reversed because of the failure of plaintiff's reply, pleading an estoppel on the part of the wife, to state that he believed the representations made by the wife that the money borrowed was for the joint use and benefit of herself and husband and their joint property, and that he acted upon such representations and belief in making the loan, where the facts specially found by the court fully established an estoppel.

From Lake Superior Court; *H. B. Tuthill*, Judge.

Action by John F. Jarnecke against Charles Lavene and wife for foreclosure of mortgage. From a judgment for plaintiff, defendants appeal. *Affirmed.*

*B. Borders, L. Becker* and *J. O. Bowers*, for appellants.
*B. F. Ibach* and *J. G. Ibach*, for appellee.

BLACK, J.—To the complaint of the appellee upon a promissory note and a mortgage on real estate, executed to him by the appellants, the latter answered by denial, and the appellant Anna Lavene answered separately, showing that at the time of the execution of the note and mortgage she was, and she still was, a married woman, wife of her co-defendant, the appellant Charles Lavene, and was a resident of this State, and that the mortgaged property then was owned, and was still owned, by the appellants as tenants by entireties; that the note was given for money borrowed of the appellee by her codefendant, and she signed it as security for her husband; that the mortgage was executed to secure the note and for no other purpose, and was executed by her as security for her husband; that she never received any part of the money so loaned upon the note, and no part thereof was used for the benefit of her or of her separate estate.

The appellee replied to this answer of the wife by denial and by a second paragraph, wherein he admitted that the appellants were husband and wife and held the real estate as tenants by entireties, and alleged that at the time the note and mortgage were executed the wife represented to the appellee that the money to be obtained upon the execution of the note and mortgage was to be applied to the improvement of the mortgaged property, and for no other purpose, and it was to be used in the improvement of their said joint property, and for their joint benefit, and for no other purpose, and that she was not surety for her husband; "upon which representation said money was loaned to said defendants for their joint use; wherefore the plaintiff says that the said Anna Lavene should be estopped to set up any claim as surety against him, and he demands judgment." A demurrer to this second paragraph of reply was overruled.

The court rendered a special finding, wherein it was found that at the time of the execution of the mortgage a dwelling-house erected on the real estate in question, a city

lot, was completed, and no repairs or improvements thereon were needed; that a few days before the execution of the note and mortgage the appellant Charles applied to the appellee for a loan of $600, and offered to secure the payment thereof by mortgage on the property in question. The appellee was acquainted with the value and the location of the property, and he stated to the appellant Charles, that he could have the money if the title was good, and directed him to take the abstract to the law office of a certain lawyer, appellee's attorney, for completion and examination. The appellee had been acquainted with the appellants for five years, and knew where they resided; and a few days after the application was so made, he called at the residence of the appellants and informed the appellant Charles that the money was ready, and that the appellants must come to said law office to execute the papers, and they accordingly went to that office for such purpose. The appellant Anna had been for some years accustomed to the transaction of legal business and had executed mortgages and had business in court on different occasions, in which she had been directly interested. After the abstract had been examined, and before any money had been loaned, said attorney informed the appellant Anna that he observed from the abstract that she and her said husband were joint owners of the property, and that they being such, he could not advise the appellee to loan any money upon the property unless the money was being borrowed for their joint use and benefit and for the improvement of the property; whereupon she informed him that the appellants wanted the money for their joint use and benefit, and for the improvement of their joint property. About the same time, and before any money was loaned, the appellant Charles was informed by the lawyer that he had examined the abstract and had learned from it that the appellants were joint owners of the property, and that he could not advise the appellee to make any loan upon the property unless it was for their joint use and benefit and for

the improvement of the property; whereupon the appellant Charles informed the lawyer that they wanted it for their joint use and for the improvement of the property and for no other purpose. After the lawyer had so conversed with the appellant Anna, before the completion of the negotiations, and on the day before the execution of the papers, the appellee was informed for the first time by the lawyer that the title to the property was in the appellants as tenants by entireties, and was instructed by the lawyer that no loan could be made upon the property unless it was for the joint use of the appellants and for the benefit of the property; and the lawyer then told him that the appellants had informed him that the loan was intended and desired for their joint benefit and for the improvement of their property. When the appellants went to the law office to execute the papers, they were informed by the lawyer that they could have the money if it was wanted "to improve their joint benefit," and thereupon the lawyer prepared the mortgage and note set out in the complaint. The note contained a statement that it was given for money borrowed to improve property described in the mortgage, and the mortgage contained a statement that the note was given for money loaned to improve and repair the buildings on the property and for the joint interest of the borrowers and mortgagors. When the appellants executed the note and mortgage they knew that these statements were contained therein. At the same time, the lawyer prepared and the appellants signed and were sworn to an affidavit, set out in the finding, bearing the date of the note and mortgage, in which each of them swore that the money for which the note and mortgage were given was obtained from the appellee in this manner, for the purpose of repairing and improving the property described in the mortgage, and for no other purpose, and that the mortgage and note were not given in any sense to secure the debts of the appellant Charles; also that it was upon this representation

that the money was being so loaned to them, and that they and each of them would pay the money when due, and that no effort would be made to defeat the recovery thereof from them on the ground of its being a security debt or any other defense whatever; that the loan was being made to them on these representations, and that the same were true in every respect. At the time of the execution of the affidavit both of the appellants fully knew and understood its contents. The affidavit, after being signed by the appellants, and after they had been sworn thereto, and after the jurat of the officer had been attached together with his seal thereto, was delivered to the appellee, prior to the completion of the contract of loan.

After the execution and delivery of the papers, the appellants were asked to whom the check should be made payable, and at the direction of both of them, and upon the statement of the appellant Anna that the appellant Charles could cash the check, two checks, each for $300, were made payable to the appellant Charles, and the appellee delivered them to the appellant Charles, who cashed them and used the money in his business. The appellant Anna received no part of the money, and no part thereof was used for her benefit or for the benefit of her property or for the joint benefit of the property of the appellants or for their joint benefit. One year after the execution of the note, the appellant Charles gave his wife $48 with which to pay the interest on the note, and she paid the appellee that sum, and it was indorsed on the back of the note. No other portion of the note has been paid. The appellee had no knowledge from what source she obtained the money so paid by her. The amount due as principal and interest and the amount of the attorney's fees were stated. At the time of the making of the loan, the appellant Charles and his son-in-law were engaged as partners in a manufacturing business, the appellant Anna having no interest therein, none of which facts the appellee knew, and he did not learn them until

long after making the loan. When the appellant Charles applied to the appellee for a loan and when the loan was made, the appellee was not informed that the appellant Charles desired to use the money in his business, but by agreement between the appellants and the appellee the loan was to be made after examination of the abstract of title by said attorney and on his approval of the making of the loan. The court found that the appellee relied on the statements made by the appellants that they desired the money for the benefit of the estate mortgaged and that they intended so to use the same, to improve their said joint property; that he made the loan to them for that and for no other purpose, and they stated no other purpose or object of borrowing the money at the time of the making of the loan; that the appellee in making the loan made it solely upon the strength and faith of the representations made by the appellants to said lawyer, communicated to the appellee, and upon the representations made at the lawyer's office as herein found. The conclusions of law stated by the court were in favor of the appellee. A motion of the appellants for new trial was overruled.

It is contended here on behalf of the appellants, that in the second paragraph of reply the appellee did not sufficiently plead an estoppel, special reference being made to the words, "upon which representations said money was loaned to said defendants for their joint use," and it being insisted that the reply was bad because it was not stated therein that the appellee believed the representations and that he acted on them. It is also contended that the evidence was not sufficient to sustain the finding that the appellee believed and relied on the representations of the appellant Anna.

We can not treat the evidence as properly in the record, for the reason that the bill of exceptions containing it was not presented to the judge within the time beyond the term given when the motion for a new trial was overruled.

Whether or not the reply contained facts, well pleaded, sufficient to constitute an estoppel, the court's special finding shows that the court treated the averment, whose inadequacy is asserted by the appellants, as equivalent to the averments which the appellants contend should have been inserted in the reply; and the facts specially found by the court fully and unquestionably establish an estoppel. In such case, where husband and wife, owning real estate as tenants by entireties, mortgage it to secure their promissory note, her liability is not determined by the form of the contract; but the wife can not avail herself of a claim of suretyship, if, in fact, the entire consideration was a benefit to her in person or to her interest in the property, or if her conduct in the premises was such as to create an estoppel *in pais* within the equitable rules applicable to such estoppels. To the extent to which she receives the consideration she is not a surety, and she is bound by an estoppel *in pais* like any other person. Our statute (§348 Burns 1901, §345 Horner 1901) provides, that "no objection taken by demurrer, and overruled, shall be sufficient to reverse the judgment, if it appear from the whole record that the merits of the cause have been fairly determined."

It does appear sufficiently from the record before us that the merits of the cause, including the matter in dispute here, were fairly determined.

Judgment affirmed, with ten per cent. damages.