BRUSHA *et ux.* v. BOARD OF EDUCATION OF
OKLAHOMA CITY.

No. 2561.   Opinion Filed April 4, 1913.

Rehearing Denied March 10, 1914.

(139 Pac. 298.)

1.   **ESTOPPEL—Equitable Estoppel—Sale of Homestead—Right to Recover.** A school board purchased from a husband, before he had made final proof, about three acres of a quarter section entered and occupied as a homestead. He executed a quitclaim deed, received the consideration, and delivered possession of the land to the school board; but his wife did not join in the deed, as required by section 1627, St. Okla. 1893, in force at the time the conveyance was made. The board built a schoolhouse, and otherwise improved the property at a considerable expense, without objection by either husband or wife, and remained in possession for a number of years, without any assertion of title to the land by either husband or wife. **Held,** that both husband and wife are estopped from recovering the property.

2.    ESTOPPEL—Married Women—Removal of Disability.    A married woman is under no disability by reason of coverture in this state, and is subject to the same rule of estoppel as any other person sui juris.

(Syllabus by Rosser, C.)

*Error from District Court, Oklahoma County;*
*James W. Steen, Assigned Judge.*

Action by John W. Brusha and another against the Board of Education of Oklahoma City. Judgment for defendant, and plaintiffs bring error. Affirmed.

*S. A. Horton,* for plaintiffs in error.

*Everest, Smith & Campbell,* for defendant in error.

Opinion by ROSSER, C.  This·was an action by John W. Brusha and his wife, Ollie Brusha, against the board of education of Oklahoma City to recover certain land in the possession of the board of education, upon which land a school building has been built.  John W. Brusha settled upon a quarter section of land, of which the land in controversy is part, on the 22d of April, 1889, at the time of the opening of land in Oklahoma county for settlement, and contested a homestead entry on the land made prior to his attempted entry.  He remained on the land, cultivating and improving it, from the time of settlement until he moved away in 1900.  He was successful in his contest, and on the 13th of February, 1895, he submitted final proof, and on the 17th of April, 1895, received a final certificate for the land, and a patent was issued to him on June 18, 1895.  On the 1st of March, 1892, he married the plaintiff Ollie Brusha, and she immediately took up her residence on the land with the plaintiff, her husband, and continued to reside there until about 1900, when they both moved to Pottawatomie county, and purchased land upon which they have since resided, and which is now their homestead, and exempt to them under the laws of the state.  On the 17th of May, 1894, prior to the time of his entry at the land office, and prior to the issuance of the patent or receiver's certificate, the plaintiff John W. Brusha executed and delivered to the board of education a quitclaim deed to the

land in controversy, consisting of a little over three acres of the homestead entry.   His wife did not join in this deed, but knew, the next day after it was executed, that her husband had executed it.   The board of education paid him a consideration of $600, which he received and expended just as he did any other money coming into his hands, and no particular portion of said money was ever paid or delivered to Ollie Brusha.

At the time the deed was made, and the money paid, Brusha delivered the possession of the land to the board of education. It immediately proceeded to erect a brick schoolhouse, two stories in height, with basement, at a cost of $40,000, and from time to time improved the tract by planting trees, building fences, constructing walks, digging a well, and in other ways.   The land was purchased to be used for school purposes, and has always been and is now used by the board of education for school purposes, and for no other purpose.   At the time the possession was delivered to the defendant, the plaintiff Ollie Brusha was residing upon the quarter section of which the part sold to the defendant was a portion, and knew of the deed and transfer, and permitted the board to take possession, and permitted the erection of the building, without taking any action to apprise the board of education, or any of its officers, that she claimed any right, title, or interest in the tract of land.

The board of education at the time of the purchase knew that Ollie Brusha was the wife of John·W. Brusha, and that she and her husband, with their family, were residing on the premises at the date of the erection of the school building and other improvements.   At the time John Brusha made final proof he testified before the land office, among other things, as follows:

"Q. (12) Have you sold, conveyed, or mortgaged any portion of the land, and, if so, to whom, and for what purpose? A. None, except selling about 2½ acres for public schools under section 2288, Revised Statutes of the United States."

On the 31st day of October, 1895, the Brushas made a deed to John C. Schalles.   On the 18th of October, 1897, John C. Schalles and Elizabeth Schalles, his wife, executed a deed to

H. T. Parlier. On the 18th of April, 1898, H. T. Parlier exe-
cuted a deed to Ollie Brusha, excepting therefrom the tract which
had been conveyed to the board of education and some other
small portions. These instruments were placed of record.

The plaintiff denied that the deed to Schalles was ever de-
livered, and testified that it had always remained in the posses-
sion of the plaintiff John W. Brusha. The plaintiff John W.
Brusha testified, however, that he executed the deed to Schalles
in order to avoid trouble with a man named Jones. He testified,
also, that he requested Parlier to make the deed to the plaintiff
Ollie Brusha. Schalles and Parlier also testified with reference
to these deeds, stating that the deeds executed to them and by
them respectively were made without consideration, and were
not intended to pass title.

It is contended by plaintiffs that the land became homestead
at the time Brusha married, and he and his wife began occupying
the land as husband and wife, in 1892. They contend that, as
they had resided on the land five years prior to the giving of the
deed, they were the equitable owners of the land at the time the
deed was made. And they contend that, as the land was home-
stead, section 1627, St. Okla. 1893, governed as to the manner of
conveying, and that a conveyance by the husband, his wife not
joining in the deed, carried no title. Section 1627 is as follows:

"All instruments conveying or affecting the title to the
homestead exempted by law to the head of a family, shall be void
unless the husband and wife sign and acknowledge one and the
same joint instrument conveying the same."

It is contended by the defendant that the land was of a
homestead character at the time of the conveyance, the title still
remaining in the government, and the husband as a settler had
a right, under the provisions of section 2288, Rev. Stat. U. S.
(U. S. Comp. St. 1901, p. 1385), to convey the land for school
purposes without joining his wife in the deed. Section 2288,
Rev. Stat. U. S., is as follows:

"Any *bona fide* settler under the pre-emption homestead or
other settlement law shall have the right to transfer, by warranty
against his own acts, any portion of his claim for church, ceme-
tery, or school purposes, or for the right of way of railroads,

canals, reservoirs, or ditches for irrigation or drainage across it; and the transfer for such public purposes shall in no way vitiate the right to complete and perfect title to his claim."

Defendant in error further contends that plaintiffs have no title because, admitting that the transfer to the defendant was ineffective to convey title, the plaintiffs conveyed the entire tract to Schalles, and received a reconveyance through Parlier, which excepted from the deed the portion occupied by the defendant.

Defendant further contends that plaintiffs are estopped by laches from asserting any right in the land, and they also contend that plaintiffs, by permitting the land to be used for school purposes, dedicated it for public use, and cannot now assert title.

It seems clear from the reading of the record in this case that a great injustice will be done the school board and the people of the school district if the plaintiffs recover in this action. The defendant paid for the land. It is not claimed that the amount paid was not an adequate compensation. In addition to the amount paid, it has expended a large sum for improvements, and the property is now a necessary part of the large school system of Oklahoma City. If plaintiffs should recover, the defendant would in all probability commence condemnation proceedings for the land at once.

Section 2288, Rev. Stat., *supra,* gave the right to sell for school purposes before final proof. It is not necessary to decide whether, under this section, John Brusha had the right to sell without joining his wife in the deed. John Brusha believed at the time he made final proof that his conveyance carried title. He testified before the land department that he had sold the land for school purposes as authorized by the statute.

It is not necessary, either, to decide whether it is necessary for a wife to join in a deed or other conveyance of a portion of her homestead for school or other public purposes. It has been decided that a conveyance to a railroad company of a right of way over a homestead by a husband, by an instrument in which the wife does not join, is good where such conveyance does not defeat the substantial enjoyment of the homestead as such. *Chicago, etc., R. Co. v. Swinney,* 38 Iowa, 182; *Ottumwa, etc., R.*

*Co. v. McWilliams,* 71 Iowa, 164, 32 N. W. 315; *Randall v. Texas Cen. R. Co.,* 63 Tex. 586. A very strong argument can be made in favor of the right of the husband to convey, without the concurrence of his wife, for public purposes such portions of the homestead of which he holds legal title as could be taken for the same public purposes under the right of eminent domain. But this statement is not made, nor are the last-cited cases referred to, to show that the law permits such conveyances, but to show that the school board was not itself guilty of such laches and negligence in accepting the conveyance of the husband and taking possession of the land and improving it as to prevent it from asserting an estoppel against the plaintiffs. The deed, together with the acquiescence of the plaintiffs, and the public character of the use to which the property was put, justified the school board in making the improvements. As will be shown, an estoppel in favor of a public interest will be raised upon slighter circumstances than in cases of controversies between private individuals.

What, then, is the position of the plaintiffs? The husband's attitude does not require serious consideration. He gave the deed, received the consideration, and placed the defendant in possession of the land. He knew it was bought for school purposes, and made no objection when the board was building the schoolhouse, and making the other improvements. On the contrary, he informed the officials of the land office that he had sold the land. At that time he was willing that his conveyance be considered a valid one. Never, so far as appears from the record, did he make any claim to the land prior to the bringing of this action. He is estopped by the plainest principles of equity.

"Equitable estoppel is therefore a particular doctrine, based upon justice and conscience, which is the origin, wherever it may be invoked, of primary rights of property or of contract." (Pomeroy's Eq. Juris. sec. 801.)

"Its foundation is justice and good conscience. Its object is to prevent the unconscientious and inequitable assertion of enforcement of claims or rights which might have existed or been enforceable by other rules of the law, unless prevented by the estoppel; and its practical effect is, from motives of equity and

fair dealing, to create and vest opposing rights in the party who obtains the benefit of the estoppel." (Pomeroy's Eq. Juris. sec. 802.)

Section 818, Pomeroy's Eq. Juris., is as follows:

"Acquiescence consisting of mere silence may also operate as a true estoppel in equity to preclude a party from asserting legal title and rights of property, real or personal, or rights of contract. The requisites of such estoppel have been described. A fraudulent intention of this class, in equity, rests upon the principle. If one maintains silence when in conscience he ought to speak, equity will debar him from speaking when in conscience he ought to remain silent. A most important application includes all cases where an owner of property, A., stands by and knowingly permits another person, B:, to deal with the property as though it were his, or as though he were rightfully dealing with it, without interposing any objection, as by expending money upon it, making improvements, erecting buildings, and the like. Of course it is essential that B. should be acting in ignorance of the real condition of the title, and in the supposition that he was rightful in his own dealings."

See *Wampol v. Kountz,* 14 S. D. 334, 85 N. W. 595, 86 Am. St. Rep. 765, and cases cited in note; *Roeder v. Fouts,* 5 Wash. 136, 31 Pac. 432.

It seems that, when property is taken for public use, it is not necessary, in order to enable the taker to invoke the doctrine of estoppel against the owner, that he should have been acting in ignorance of the real condition of the title. The rule has often been applied in cases where railroads have taken property, and where they could not have acted in ignorance of the owner's title.

In the case of *Hendrix v. Southern R. Co.,* 130 Ala. 205, 30 South. 596, 89 Am. St. Rep. 27, the second paragraph of the syllabus is as follows:

"The constitutional and statutory requirements respecting the conveyance of a homestead apply only when the contractual disposition of such property is sought to be made; such statutory provisions do not prevent the creation of an equitable estoppel by acts or declarations made by the owner of such property."

The third paragraph of the syllabus is as follows:

"Where a deed conveying a right of way to a railroad company is invalid by reason of its not being executed as required

by the statute to convey a homestead, but the owner of said homestead allows the railroad company to proceed to locate and construct its road on his lands, and to expend large sums of money for this purpose, and in the improvement of its road and right of way, without interfering or forbidding it to proceed, such owner is equitably estopped from asserting title in the land so occupied by the railroad company for the purpose of maintaining a suit which would take from the said company its improvements, as well as the easement for the operation of its trains."

In the case of *Reichert v. Railway Co.*, 51 Ark. 491, 11 S. W. 696, 5 L. R. A. 183, the third paragraph of the syllabus lays down the same rule as in the case of *Hendrix v. Southern R. Co.*, 130 Ala. 205, 30 South. 596, 89 Am. St. Rep. 27. In the course of the opinion the court said:

"By authority and upon principle, it would seem that original consent of the owner and his subsequent unreasonable acquiescence should be viewed alike."

In the case of *Dodd v. St. L. & H. R. Co.*, 108 Mo. 581, 18 S. W. 1117, the same principle was enunciated. The court said:

"And it is equally well settled that a party who, with full knowledge, stands by and permits a company to expend large sums of money in the construction of a railroad through his land, without objection, forfeits his right of ejectment. *Kanaga v. Railroad*, 76 Mo. 207; *Provolt v. Railroad*, 57 Mo. 257; *Masterson v. Railroad*, 72 Mo. 343; [*Reichert v. St. L. & S. F. R. Co.*, 51 Ark. 491, 11 S. W. 696] 5 L. R. A. 183, and notes. This right is forfeited by virtue of the application of the doctrine of estoppel as well as the intervention of public interests."

The general doctrine with reference to railroads is laid down in the following cases: *Taylor v. C., M. & P. R. Co.*, 63 Wis. 327, 24 N. W. 84; *Baltimore & O. R. Co. v. Strauss*, 37 Md. 237; *Chicago, R. I. & P. Ry. Co. v. Joliet*, 79 Ill. 25; *L. & N. R. Co. v. Pittsburgh & K. Coal Co.*, 111 Ky. 960, 64 S. W. 969, 55 L. R. A. 601, 98 Am. St. Rep. 447; *B. & O. R. Co. v. Strauss*, 37 Md. 237; *Scarritt v. K. C. S. R. Co.*, 127 Mo. 298, 29 S. W. 1024; *Planet P. & F. Co. v. St. L., etc. R. Co.*, 115 Mo. 613, 22 S. W. 616; *Morgan v. C. & A. R. Co.*, 96 U. S. 716, 24 L. Ed. 743; *Roberts v. N. Pac. R. Co.*, 158 U. S. 1, 15 Sup. Ct. 756, 39 L. Ed. 873.

No sufficient reason can be given why the same doctrine should not be applied in favor of the defendant in this case. The school board had the right to condemn the land. St. Okla. 1893, sec. 5776. The plaintiffs could not have prevented the board from taking the land upon making just compensation. Having permitted the board to enter and build the school buildings, and make other improvements, they are in the same attitude as the plaintiffs in those numerous cases just cited, in which a railroad company was the defendant.

The wife, Ollie Brusha, is in no better condition to maintain this action than her husband. She knew of the sale by her husband. She took no action to prevent the school board from taking possession. She did not demand that her husband return the consideration. She never at any time notified the school board not to make improvements on the land. She never claimed any rights as against her husband's deed. It is argued that by joining in the deed to Schalles she asserted ownership. It is difficult to reconcile this with her statement and the statement of the other witnesses in the case that the deed to Schalles was not intended to convey anything. If she and her husband were to retain the deed, and never intended to deliver it, the contents of the deed no more asserted ownership than if the two plaintiffs had whispered each to the other as they sat together at their fireside: "We are the owners of that land in possession of the school board." It is hard to believe that they intended to take such a roundabout method of claiming ownership, when a letter making the claim could have been written with much less trouble. The fact that Mrs. Brusha accepted a deed back from Parlier to the balance of 160, from which deed the land to the school board was expressly excepted, is a very strong indication that she did not at that time claim any interest in the land. Common honesty demanded that she make the claim if she expected to try and recover the land. She is estopped by her silence and apparent consent to the transfer from recovering the land now, after the lapse of all these years, and after the large expenditure which the board has made in reliance upon and on the faith of her husband's deed.

In section 814 of Pom. Eq. Juris., the rule with reference to estoppel, as applied to married women, is stated as follows:

"Upon the question how far the doctrine of equitable estoppel by conduct applies to married women, there is some conflict among the decisions. The tendency of modern authority, however, is strongly towards the indorsement of the estoppel against married women as against persons *sui juris*, with little or no limitation on account of their disability. This is plainly so in states where the legislation has freed their property from all interest or control of their husbands, and has clothed them with partial or complete capacity to deal with it as though they were single. Even independently of this legislation there is a decided preponderance of authority sustaining the estoppel against her, either when she is attempting to enforce an alleged right, or to maintain a defense. There are, however, decisions which hold, in effect, that, since a married woman cannot be directly bound by her contracts or conveyances, even when accompanied with fraud, so she cannot be indirectly bound through means of an estoppel; and the operation of the estoppel against her must be confined to cases where she is attempting affirmatively to enforce a right inconsistent with her previous conduct, upon which the other party has relied. These decisions seem to be in opposition to the general current of authority."

The statutes of Oklahoma remove all disabilities from married woman. Section 3655, Comp. Laws 1909 (section 2978, St. Okla. 1893 [Rev. Laws 1910, sec. 3363]), provides that a woman shall retain the same legal existence and legal personality after marriage as before marriage, and shall receive the same protection of her rights as a woman that her husband does as a man, and for any injury sustained to her reputation, person, property, character, or any natural right, she shall have the same right to appeal in her own name alone to the courts of law or equity for redress and protection that her husband has to appeal in his own name alone, provided that this act shall not confer upon the wife a right to vote or hold office, except as is otherwise provided by law.

This is broad language. The proviso that the wife shall not be allowed to vote or hold office emphasizes the preceding portion of the statute, to the effect that she has in other matters the same rights as a man. Rights and duties are correlative. If

the wife had made a deed to the land in question, and the husband had permitted the school board to take possession of the property and erect improvements, would any one deny that he was thereby estopped from asserting rights in the land?

Section 5561, Comp. Laws 1909 (Rev. Laws 1910, sec. 4684), provides that a married woman may sue and be sued in the same manner as if she were not married. Throughout the statute is manifested the intention to give the wife the same rights and standing in the community and in the courts with reference to her property as a man. If she has the same rights, she is charged with the same duties.

In the case of *Grice v. Woodworth*, 10 Idaho, 459, 80 Pac. 912, 69 L. R. A. 584, 109 Am. St. Rep. 214, Jay Woodworth, the husband, had listed the land for sale, and afterwards made an oral agreement with Grice to sell him the land for a certain sum. Grice entered into possession, and paid the greater portion of the consideration, and placed improvements on the land of the value of about $250. Afterwards Grice demanded a deed to the land, and Woodworth refused to make it. The defense was that the land was homestead, and that the wife had not joined in the conveyance by executing and acknowledging the conveyance according to the statute of Idaho, which is practically the same as the statute of Oklahoma on the same subject. There was a judgment in the lower court in favor of the Woodworths, adjudging them to be the owners of the land. This case was reversed upon appeal. In the course of the opinion the court said:

"Sections 3040 and 3041 [the sections requiring the joint execution of a deed to the homestead] are in the nature of rules of evidence, and are subject to the same legal principles as are conveyances falling under the statute of frauds and the rules of equitable estoppel and waiver. We are aware that there is much conflict among the decisions of the question of how far the doctrine of equitable estoppel applies to married women. One of the leading decisions of the Pacific Coast states is that of *Morrison v. Wilson*, 13 Cal. 495, 73 Am. Dec. 593. See, also, cases cited in 1 Notes on California Reports, pp. 604 and 605."

The court then quotes from section 814, Pom. Eq. Juris., quoted above, and then continues:

"The author cites modern English cases, as well as American, to sustain the text. In the case of *Galbraith v. Lunsford,* 87 Tenn. 89, 9 S. W. 365, 1 L. R. A. 522, in referring to *Morrison v. Wilson,* 13 Cal. 495, 73 Am. Dec. 593, the Tennessee court says that the case of *Morrison v. Wilson,* 13 Cal. 495, 73 Am. Dec. 593, 'relied on so confidently by counsel for complainant, seems to not only deny the application of an estoppel *in pais* to a married woman, but goes so far as to hold that affirmative fraud on her part will not effect that result. It is sufficient to say of this case that it not only loses sight of the distinction referred to as to defective execution of a contract, but is directly opposed to our own adjudged cases, so far as the element of fraud is concerned.' In *Pilcher v. Smith,* 2 Head (Tenn.) 208, it is said: 'The legal disability of coverture carries with it no license or privilege to practice fraud or deception on other innocent persons.' "

In the case of *Wilder v. Wilder,* 89 Ala. 414, 7 South. 767, 9 L. R. A. 97, 18 Am. St. Rep. 130, the court, speaking of the question of estoppel of married women, said:

"If she could be estopped in no instance, the morality of the law would be placed upon a very low plane, and the disability of coverture, instead of being, as it ought to be, a shield for her protection against legal wrong, would become a sword of injustice for the license of fraud."

In the case of *Galbraith v. Lunsford,* 87 Tenn. 89, 9 S. W. 365, 1 L. R. A. 522, the court said:

"The contention is that, as a married woman cannot, in reference to her lands, bind herself by title bond, power of attorney, contract of sale, or even a deed, without privy examination and certificate of acknowledgment in a prescribed form, showing that it was done freely, voluntarily, and understandingly, it would be an anomaly in the law to hold that she might part with her title indirectly, when she had no purpose to do so, and when, instead of doing so freely, voluntarily, and understandingly, she was actually in ignorance, or laboring under a mistake of fact. And cases are cited which seem to sustain the contention. It must be admitted that the cases on this subject are to a certain extent conflicting. But much of the difficulty and confusion is due to a failure to observe the distinction between the cases which seek, by the doctrine of estoppel, to validate those contracts of a married woman which by law are declared void, and the cases

where, in the absence of any contract or agreement, her conduct has been held to prevent her from asserting what would otherwise be a right. To the former class belongs the case of *Dodd v. Benthal,* 4 Heisk. (Tenn.) 601. And the language of the judge delivering the opinion in that case, at page 607, where he says, 'The complainant being both an infant and *feme covert* at the time of * * * the deed in question, no act of affirmance or disaffirmance *in pais* on her part during coverture could be binding upon her,' etc., is correct when confined to a contract of a person under disability, which by law is void in consequence of such disability. To the latter class above referred to belongs the case of *Howell v. Hale,* 5 Lea (Tenn.) 405. Here the conduct of the married woman, independent of any contract, operates to estop her in the same manner and to the same extent as if she were a *feme sole.* So in the case at bar, while there are facts and circumstances upon which a contract might be implied that would be binding upon a person *sui juris,* yet there are also such admissions, statements, and conduct on the part of the complainants and their ancestors as are amply sufficient to create an estoppel entirely independent of, and altogether outside of, any idea or claim of a contract."

The distinction to be made is that, where the general disabilities of a married woman have not yet been removed, and the statute only confers the power to make certain specific contracts or conveyances, and requires certain formalities in the making of those contracts or conveyances, a married woman cannot be estopped, at least in the absence of fraud, positive fraud; but, where her general disabilities as a married woman have been removed, she can be estopped by her conduct, though as to the particular matter the law may require a contract or conveyance to be evidenced by certain formalities. In the one case the right to contract by observing the formality is to create a right the woman would not otherwise have had; in the other the requirement of the formality is a restriction on her general power.

In the case of *Monroe v. Stayt,* 57 Wash. 592, 107 Pac. 517, 30 L. R. A. (N. S.) 1102, the facts were that a husband and wife were in possession of land, claiming it as community property. The husband took a written lease from another person who also claimed the property. It was held that the wife was estopped by the lease, and the possession of the husband

and herself under the lease, from denying the title of the lessor in an action for the possession, although she had refused to sign the lease.

In the following cases the doctrine of estoppel was applied in various ways against married women: *Long v. Crosson,* 119 Ind. 3, 21 N. E. 450, 4 L. R. A. 783; *Dobbin v. Cordiner,* 41 Minn. 165, 42 N. W. 870, 4 L. R. A. 333, 16 Am. St. Rep. 683; *Galbraith v. Lunsford,* 87 Tenn. 89, 9 S. W. 365, 1 L. R. A. 522; *Mohler v. Shank,* 93 Iowa, 273, 61 N. W. 981, 34 L. R. A. 161, 57 Am. St. Rep. 274; *Wilder v. Wilder,* 89 Ala. 414, 7 South. 767, 9 L. R. A. 97, 18 Am. St. Rep. 130; *Magel v. Milligan,* 150 Ind. 582, 50 N. E. 564, 65 Am. St. Rep. 382; *Government Bldg. & L. Inst. v. Denny,* 154 Ind. 261, 55 N. E. 757; *Lavene v. Jarnecke,* 28 Ind. App. 261, 62 N. E. 510; See *Crowley v. Crowley* (Mo. App.) 151 S. W. 512.

In *Trimble v. State,* 145 Ind. 154, 44 N. E. 260, 57 Am. St. Rep. 163, it was held that a wife who joins with her husband in making an application to the county auditor for a loan from the school fund, and in the execution of a note therefor, and a mortgage on their land held by the entireties to secure the note, is estopped to deny the validity of the mortgage, although the money obtained was used to pay the individual debts of the husband. It was said that the doctrine of estoppel should be more strictly enforced against a married woman who seeks to defeat a mortgage executed by her to secure the payment of a loan from the school fund obtained under, and in compliance with, the provisions of the school law than in cases where the money has been loaned by private individuals. It will be observed from this case, as well as the railroad cases above referred to, that an estoppel is raised more readily in favor of a public interest.

If the wife intended, during the twelve years the school board had been in possession and making improvements, to bring suit for the possession after the improvements should be completed, she was guilty of actual dishonesty in failing to give

notice of such intention before the improvements were made. If, as appears more likely from the reading of the record, she intended, until about the time the suit was brought, that the school board should have the property, she will not now be permitted to change her mind.

The judgment should be affirmed.

By the Court: It is so ordered.